[No. 804. Decided July 12, 1893.]

## THE STATE OF WASHINGTON, *Respondent*, v. CHARLES H. BROWN, *Appellant*.

NUISANCE — DISORDERLY HOUSES — EMPLOYMENT OF WOMEN TO DRAW CUSTOM — INFORMATION. .

In order to set forth the facts constituting the crime of keeping a house or saloon where women are employed to draw custom and to dance, the information should aver that women were employed for the purposes mentioned at the time when it is alleged the defendant kept the house described in the information.

It is not sufficient, under § 2894, Gen. Stat., to aver in an information that the defendant kept a house "used as a place of resort, where women are employed to draw custom and to dance, all of which is to the injury and common nuisance of all the people," but the information should show that the character of the women alleged to have been employed, or the manner of their deportment, and quality and character of conversation, was such as tended to draw together crowds of disorderly persons, or to debauch the morals of those resorting to the place.

*Appeal from Superior Court, Jefferson County.*

*Robert W. Jennings,* for appellant.

*Thomas Fitzgerald,* Prosecuting Attorney, for The State.

The opinion of the court was delivered by

ANDERS, J.—The appellant was tried and convicted of maintaining a public nuisance, upon an information which, omitting the formal parts, was as follows:

"Comes now R. E. Moody, the prosecuting attorney of Jefferson county, State of Washington, and by this information informs against, charges and accuses Charles H. Brown of maintaining a public nuisance committed as follows, to wit:   The said Charles H. Brown then and there being did unlawfully on the 5th day of September, A. D. 1892, keep a house located in the city of Port Townsend, county of Jefferson, State of Washington, on the easterly side of Water street between Quincy and Adams streets in said city, and which said house is commonly known as the Merchant's saloon, which said house was then used as a place of resort where women are employed to draw custom and to dance, all of which is to the injury and common nuisance of all the people, contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Washington."

The portion of the statute (§ 2894, Gen. Stat.) upon which the information was based, material to the present case, is as follows:

"Houses of ill-fame kept for the purpose, in which are embraced all squaw dance houses, or squaw brothels, otherwise called madhouses; all houses, rooms, saloons, booths, scows, boats or other structures used as a place of resort, where women are employed to draw custom, dance, or for purposes of prostitution   .   .   .   are nuisances, and may be abated, and the owners, keepers, or persons in charge thereof, and persons carrying on such unlawful business, shall be punished as provided in this title."

The only assignment of error alleged is that the court erred in overruling the defendant's demurrer to the information. It is contended by the appellant that the information charges no crime, for the reason that it is not alleged therein that at the time appellant is said to have kept the house women were employed to draw custom and dance, but that the house was then used as a place of resort where women are employed to draw custom and dance. This contention is not without force.

In order to set forth the facts constituting the crime attempted to be charged it was necessary to aver in the information that women were employed for the purposes mentioned in the statute at the time when it is alleged the defendant kept the house therein described. And this was not done in this instance. The term "are employed" cannot by any rule of construction be made to relate to the date previously mentioned in the information.

It is further contended by the appellant that the information is fatally defective in not showing that the manner of "drawing custom" and of dancing, for which the women are alleged to have been employed, was such as to shock the moral sense, or to interfere with the peace and good order of the community, or in any manner whatever to affect the community, or to constitute a nuisance. That portion of the information to which appellant's objection is directed follows the language of the statute, and is consequently sufficient, unless the words used are so general as to include cases not intended by the legislature to be included in the statute. If, therefore, women may, within the meaning of the statute, in any case lawfully be employed in any place of resort to draw custom, or to dance, then the information should have stated facts showing that this was not one of those cases, notwithstanding the language of the law suggests no exception.

It is the intention of the legislature that is to be deter-

mined in the construction of statutes, and in arriving at the intention it is sometimes necessary to restrict the meaning of the language used by the law makers so as not to include therein all that the words express.

"It is a familiar canon of construction that the thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers." ·*Riggs v. Palmer*, 115 N. Y. 506 (22 N. E. Rep. 188).

It was evidently the object and intention of the legislature, in passing the statute under consideration, to punish all persons engaged in any business which openly outrages decency and tends to corrupt the public morals, and not to condemn the employing of women, in all cases, even for the purpose of drawing custom and dancing, regardless of the effect thereof upon the community.

At common law all public shows of a scandalous and demoralizing character were nuisances, without regard to whether the persons participating therein were men or women, while theaters and other places of innocent amusement were favorably recognized. Taken literally, the language of our statute would authorize the punishment of all theatrical managers who open their doors and permit the public to enter and witness the performance of even the greatest of female histrionic or terpsichorean celebrities, yet no one would for a moment consider that such was the intention of the legislature.

That this is true is manifest, not only from a consideration of the object of the law, but also from the further fact that the legislature itself has declared that any business, vocation, profession and calling followed and pursued by men may be followed and pursued by women, and no person shall be disqualified from engaging in or pursuing any business, vocation, profession, calling or employment on ac-

count of sex. Gen. Stat., § 2961. Whatever legitimate occupation or calling may be followed or pursued by men, except holding office, may also be followed or engaged in by women, and we are therefore of the opinion that the information in this case should have gone further and shown that the character of the women alleged to have been employed, or the manner of their deportment, and quality and character of conversation, was such as tended to draw together crowds of disorderly persons, or to debauch the morals of those resorting to the place. Liquor selling is recognized by our law as a legitimate vocation, and we think that even a woman may be employed in a saloon without thereby necessarily rendering the place a nuisance within the meaning of the statute in question.

The judgment is reversed, and the cause remanded to the court below, with directions to sustain the demurrer to the information.

SCOTT, STILES and HOYT, JJ., concur.

DUNBAR, C. J., dissents.