[No. 13996.  Department Two.  November 20, 1917.]

THE STATE OF WASHINGTON, *Appellant*, v. JOHN CLANCY
*et al.*, *Respondents*.[1]

DISORDERLY HOUSE—INDICTMENT—SUFFICIENCY — STATUTES —"NUI-
SANCE." Under Rem. Code, § 8319, making it a nuisance and pun-
ishable to employ women to draw custom, dance, or for purposes of
prostitution, in any public house or place of resort, it is necessary to
allege that the character of the women employed or their deport-
ment was such as to tend to draw together crowds of disorderly
persons or to corrupt the morals of those resorting to the place; the
intention of the legislature in passing the general nuisance statute
being to punish persons engaged in any business which openly de-
bauches decency and tends to corrupt morals and not to condemn
the employment of women in all cases.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered January 11, 1917, upon sus-
taining a demurrer to the indictment, dismissing a prosecu-
tion for maintaining a public nuisance.  Affirmed.

*Alfred H. Lundin* and *Frank P. Helsell*, for appellant.

HOLCOMB, J.—On November 24, 1916, respondents were
indicted by a grand jury in King county, Washington, for
maintaining a public nuisance.  The charging part of the
indictment is as follows:

"They, said John Clancy and H. L. Smith, and each of
them, in the county of King, state of Washington, on the
28th day of August, 1916, and from thence on continuously
up to and including the 23d day of November, 1916, did
keep and maintain a house located at 158½ Washington
street in the city of Seattle, said county and state, which said
house was then and there used as a place of resort and as a
public dance hall where money was charged for the privilege
of dancing and where beverages were sold, and was then and
there a place where women were employed to draw custom
and to dance, in this that women were then and there em-

[1]Reported in 168 Pac. 894.

ployed upon a commission basis to solicit men to dance with them, to dance with men, and to solicit men to buy drinks for said women at a bar and soft drink counter, then and there maintained in said house, all of which then and there made said house a common nuisance and then and there tended to debauch the morals of those resorting to said house."

The indictment was drawn under Rem. Code, § 8319, which is as follows:

"Houses of ill fame, kept for the purpose, in which are embraced all squaw dance-houses, or squaw brothels, otherwise called mad houses; all houses, rooms, saloons, booths, scows, boats, or other structures used as a place of resort, where women are employed to draw custom, dance, or for purposes of prostitution; all public houses or places of resort where gambling is carried on or permitted; all houses or places within any city, town, or village, or upon any public road or highway, where drunkenness, gambling, fighting, or breaches of the peace are carried on or permitted; all opium dens or houses, or places of resort where opium smoking is permitted, are nuisances, and may be abated, and the owners, keepers, or persons in charge thereof, and persons carrying on such unlawful business, shall be punished as provided in this chapter."

This section is a part of a general nuisance statute passed in 1875 and applies to all forms of nuisance, providing both civil and criminal remedies for the abatement thereof. The particular language of the section upon which the indictment was founded is as follows:

"All houses, rooms, . . . or other structures used as a place of resort, where women are employed to draw custom, dance, or for purposes of prostitution."

It is contended by the appellant that all such places are declared to be nuisances, and the owners, keepers, and persons in charge thereof are to be punished as provided for in other sections of the act. The court sustained respondents' demurrer to the indictment and dismissed the action, upon the ground that the indictment did not state facts sufficient to constitute a crime or offense.

The court based its decision upon the case of *State v. Brown*, 7 Wash. 10, 34 Pac. 132, where a person was tried and convicted under the same statute, but where the charge did not contain the allegation "all of which then and there made such house a common nuisance and then and there tended to debauch the morals of those resorting to said house." This additional allegation, it is contended by the state, distinguished the indictment in this case from the information in the cited case, the court in that case saying:

"It was evidently the object and intention of the legislature, in passing the statute under consideration, to punish all persons engaged in any business which openly outrages decency and tends to corrupt the public morals, and not to condemn the employing of women, in all cases, even for the purpose of drawing custom and dancing, regardless of the effect thereof upon the community."

And:

"Whatever legitimate occupation or calling may be followed or pursued by men . . . may also be followed or engaged in by women, and we are therefore of the opinion that the information in this case should have gone further and shown that the character of the women alleged to have been employed or the manner of their deportment and quality and character of conversation, was such as tended to draw together crowds of disorderly persons, or to debauch the morals of those resorting to the place."

In this case, as in that, the allegations of fact particularizing the conduct of the place alleged to be a common nuisance are that the place was maintained "as a place of resort and as a public dance hall where money was charged for the privilege of dancing and where beverages were sold, and was then and there a place where women were employed to draw custom and to dance, in this that women were then and there employed upon a commission basis to solicit men to dance with them, to dance with men, and to solicit men to buy drinks for said women at a bar and soft drink counter, then and there maintained in said house." There is then the

general· allegation that all of those facts made the house a common nuisance, and then and there tended to debauch the morals of those resorting to the house.  These general allegations do not constitute allegations of such facts as were indicated in the cited case, that the charge should have gone further and shown "that the character of the women alleged to have been employed, or the manner of their deportment and quality and character of conversation, was such as tended to. draw together crowds of disorderly persons or to debauch the morals, of those resorting to the place."  As was said in that case:

"At common law all public shows of a scandalous and demoralizing character were nuisances, without regard to whether the persons participating therein were men or women, while theaters and other places of innocent amusement were favorably recognized.  Taken literally, the language of our statute would authorize the punishment of all theatrical managers who open their doors and permit the public to enter and witness the performance of even the greatest of female histrionic or terpsichorean celebrities, yet no one would for a moment consider that such was the intention of the legislature."

There is no allegation that the character of the women was bad; that their deportment was bad; that the quality and character of their conversation was bad; or that their conduct tended to collect crowds of disorderly persons to the place.  It cannot be said, as a matter of law, that women who are merely engaged upon a commission basis to draw custom for the sale of soft drinks, or for dancing, are engaged in immoral business or creating a common nuisance.

The indictment was not sufficient.  The judgment of the lower court is affirmed.

ELLIS, C. J., MOUNT, CHADWICK, and MORRIS, JJ., concur.