[No. 11617-4-III.  Division Three.  October 20, 1992.]

JANE ROE, *Appellant*, v. QUALITY TRANSPORTATION
SERVICES, ET AL, *Respondents*.

*Rodney K. Nelson* and *Abeyta & Nelson, P.S.; Clifford Freed* and *Frank & Rosen,* for appellant.

*Ryan M. Edgley* and *Lofland & Associates,* for respondents.

SWEENEY, J. — Jane Roe,[1] a private employee, was terminated from her office position with Brader Hauling Service, Inc., a subsidiary of Quality Transportation Services, for refusing to submit to drug testing pursuant to a company policy. Ms. Roe brought a wrongful discharge action against

---

[1] The trial court granted the plaintiff's motion to proceed anonymously.

Brader and Quality (collectively referred to as Quality). The trial court granted Quality's motion to dismiss for failure to state a claim upon which relief can be granted (CR 12(b)(6)) holding there was no clear mandate of public policy prohibiting a private employer from requiring drug testing of a terminable-at-will employee. Ms. Roe appeals. We affirm.

## Factual and Procedural Background

Ms. Roe was hired in June 1986, for an office position with Quality. Ms. Roe was a terminable-at-will employee. She performed at or above company expectations. Quality never suspected that she used drugs.

In August 1988, Quality expanded its drug testing to include all employees. The new policy required that all employees submit to random drug testing as a condition of employment. Ms. Roe protested the policy verbally and in writing. After Ms. Roe refused to submit to drug testing, Quality terminated her employment.

Ms. Roe filed suit against Quality for wrongful discharge. Quality moved to dismiss for failure to state a claim upon which relief could be granted pursuant to CR 12(b)(6). The trial court dismissed the case finding no clear mandate of public policy which would preclude a private employer from requiring a terminable-at-will employee to submit to drug testing. Ms. Roe appeals the dismissal.

## Standard of Review

A trial court's dismissal of a case under CR 12(b)(6), failure to state a claim upon which relief can be granted, presents a question of law which we review de novo. *Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988), *aff'd on rehearing*, 113 Wn.2d 148, 776 P.2d 963 (1989). The motion "must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief." *Corrigal v. Ball & Dodd Funeral Home, Inc.*, 89 Wn.2d 959, 961, 577 P.2d 580 (1978). The plaintiff's factual allegations are presumed to be true for the purposes of a CR 12(b)(6) motion. *Lawson v. State*, 107 Wn.2d 444, 448, 730 P.2d 1308 (1986).

## CLEAR MANDATE OF PUBLIC POLICY

▮▮ The sole issue is whether a clear mandate of public policy exists which would prohibit a private employer from terminating an at-will employee for refusing to submit to drug testing. The Washington employment-at-will doctrine allows an employer to terminate an employee for any reason, unless the discharge violates "a clear mandate of public policy."[2] *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984). The public policy exception is a narrow one. We exercise caution when "called upon to declare public policy absent some prior legislative or judicial expression on the subject." (Italics omitted.) *Thompson*, at 232 (quoting *Parnar v. Americana Hotels, Inc.*, 65 Hawaii 370, 380, 652 P.2d 625 (1982)). An employee, claiming a discharge in violation of a clear mandate of public policy, has a cause of action in tort for wrongful discharge, but has the burden to prove that a clear mandate of public policy has been violated. *Thompson*, at 232.

We look to "the letter or purpose of a constitutional, statutory, or regulatory provision or scheme" or in "[p]rior judicial decisions . . ." when attempting to find and articulate a clear mandate of public policy. *Thompson*, at 232 (quoting *Parnar*, at 380). Violations of a clear mandate of public policy have been found when an employee is discharged for: (1) refusing to commit an illegal act, *e.g.*, price fixing; (2) performing a public duty, *e.g.*, jury duty; (3) exercising a legal right, *e.g.*, filing a workers' compensation claim; or (4) whistleblowing. *Dicomes v. State*, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989).

Ms. Roe contends that the indicia of a clear mandate of public policy favoring employee privacy are found collectively in the state constitution, statutes, and in the common law tort of invasion of privacy. We review each suggested source.

---

[2]Quality's citations to *Greco v. Halliburton Co.*, 674 F. Supp. 1447, 1451 (D. Wyo. 1987) and *Monroe v. Consolidated Freightways, Inc.*, 654 F. Supp. 661, 664 (E.D. Mo. 1987) in support of its position that other courts have failed to find private employer drug testing to be against public policy is misleading. Wyoming and Missouri, unlike Washington, do not recognize a public policy exception to their employment-at-will doctrines.

CONSTITUTIONAL BASIS OF MANDATE

Ms. Roe contends that article 1, section 7 of the Washington Constitution, which states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law", is a source of a clear mandate of public policy. Most certainly, this provision creates a right to privacy, but in Washington this constitutional provision has been construed as a restraint on government and not a restraint on private individuals. *State v. Ringer*, 100 Wn.2d 686, 691, 674 P.2d 1240 (1983), *overruled on other grounds in State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986); *State v. Ludvik*, 40 Wn. App. 257, 262, 698 P.2d 1064 (1985). This interpretation is consistent with that made in other courts confronted with the same question. *See Johnson v. Carpenter Technology Corp.*, 723 F. Supp. 180, 185-86 (D. Conn. 1989); *Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123, 1129-30 (Alaska 1989); *Hennessey v. Coastal Eagle Point Oil Co.*, 247 N.J. Super. 297, 305, 589 A.2d 170, 175 (1991), *aff'd*, 129 N.J. 81, 609 A.2d 11 (1992).

In contrast, the California constitutional privacy provision[3] was a result of an initiative. Ballot arguments in support of the privacy amendment convinced the California court that it applied to business as well as governmental activities. *Luck v. Southern Pac. Transp. Co.*, 218 Cal. App. 3d 1, 17-18, 267 Cal. Rptr. 618, 627, *cert. denied*, 498 U.S. 939, 112 L. Ed. 2d 309, 111 S. Ct. 344 (1990); *Semore v. Pool*, 217 Cal. App. 3d 1087, 1093-94, 266 Cal. Rptr. 280, 283 (1990).

■ Ms. Roe admits that article 1, section 7 of the Washington Constitution does not create an enforceable constitutional claim against the private employer, but claims the constitutional provision is nonetheless a source of public policy which should restrict Quality's right to discharge a terminable-at-will employee. We disagree. There is no authority in

---

[3]"All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. art. 1, § 1.

this state for applying these constitutional restraints to private citizens. *Ringer*, at 691.

### STATUTORY BASIS OF MANDATE

Ms. Roe next contends several statutes dealing with privacy issues are a source of the clear mandate of public policy.

In this state, private or public employers are prohibited from requiring a current or prospective employee to take a lie detector test or any "similar tests as a condition of employment or continued employment". RCW 49.44.120.

In *Twigg v. Hercules Corp.*, 185 W. Va. 155, 406 S.E.2d 52 (1990), a similar West Virginia statute prohibited lie detector tests. The court found by analogy that public policy would prohibit drug testing by private employers in some circumstances. *Twigg*, at 158. In West Virginia, however, the standard for recognizing a public policy exception to its terminable-at-will doctrine is different. There, the employee's termination must contravene a "substantial public policy". *Twigg*, at 157. The standard is less rigorous than the clear mandate of public policy our courts require. Further, the analysis in *Twigg* is based on two prior West Virginia cases, *Harless v. First Nat'l Bank,* 162 W. Va. 116, 246 S.E.2d 270 (1978) and *Cordle v. General Hugh Mercer Corp.,* 174 W. Va. 321, 325 S.E.2d 111 (1984). *Twigg*, at 157. We find the analysis unpersuasive. RCW 49.44.120 does not provide the required clear mandate of public policy.

Ms. Roe cites other statutes in support of her claim: RCW 42.17.255 and .310 (privacy in public records), RCW 70.24.015 (privacy related to sexually transmitted diseases), and RCW 9.73 (unauthorized recordings violate privacy). None of these statutes suggest a legislative intent to announce public policy in the area of drug testing. In fact, their existence suggests to us a legislative desire to articulate public policy in the area of privacy. The Legislature has enacted many statutes specifically regulating employer-employee relationships. *See* RCW Title 49, "Labor Regulations". The fact that the Legislature has not enacted a statute regulating

drug testing by private employers is significant. The legislative process of hearings and debates is uniquely suited to this task of defining and balancing the employee's privacy interests and employer's interests in drug testing. *See Hendrix v. Seattle*, 76 Wn.2d 142, 152, 456 P.2d 696 (1969), *cert. denied*, 397 U.S. 948 (1970), *overruled on other grounds in McInturf v. Horton*, 85 Wn.2d 704, 707, 538 P.2d 499 (1975).

### COMMON LAW INVASION OF PRIVACY AS BASIS OF MANDATE

Ms. Roe finally contends that the common law tort of invasion of privacy is a source of a clear mandate of public policy. Ms. Roe relies on cases involving the right to withdraw life support, *In re Colyer*, 99 Wn.2d 114, 121-22, 660 P.2d 738 (1983); the right to refuse HIV testing, *State v. Farmer*, 116 Wn.2d 414, 429, 805 P.2d 200, 812 P.2d 858 (1991); and the right to refuse medical treatment and electroconvulsive therapy, *Farmer*, at 429 (citing *In re Schuoler*, 106 Wn.2d 500, 506-07, 723 P.2d 1103 (1986)).

None of those cases consider the competing interests of the private employer and the employee. They raise primarily personal interests. Even the right to refuse HIV testing as an invasion of the right to privacy is not absolute. *Farmer*, at 429. In *Farmer*, the court held that the HIV test violated Mr. Farmer's right to privacy because the test result was used only as corroborating evidence. *Farmer*, at 431. The common law does not provide the clear mandate of public policy required by *Thompson*.

*Thompson* requires that we "find" not "create" public policy and further requires that the existence of such public policy be "clear". *See Thompson*, at 232. Exercising the caution *Thompson* requires, the trial court properly dismissed the case on Quality's CR 12(b)(6) motion for failure to state a claim upon which relief can be granted. No clear mandate of public policy yet exists which would preclude mandatory drug testing by a private employer.

Accordingly, the decision of the trial court is affirmed.

SHIELDS, C.J., and MUNSON, J., concur.