993 P.2d 901 (2000)
140 Wash.2d 58
Lynne Elizabeth ROBERTS, Respondent,
v.
Eric G. DUDLEY, D.V.M., and Rebecca Dudley, and their marital community, Petitioners.
No. 67365-9.
Supreme Court of Washington, En Banc.
Argued June 15, 1999.
Decided February 17, 2000.
As Amended February 22, 2000.
*902 Gregory Murphy, Amy Lewis, Clemencia Castro-Woolery, Tacoma, for Petitioners.
David Murdach, Tacoma, Amy Stephson, Seattle, for Respondents.
Jayne Freeman, Seattle, Amicus Curiae on behalf of Washington Defense Trial Lawyers.
Timothy O'Connell, Jill Bowman, Keelin Curran, Seattle, Amicus Curiae on behalf of Independent Business Association, et al.
Susan Mindenbergs, Seattle, Amicus Curiae on behalf of American Civil Liberties Union.
Kelby Fletcher, Seattle, Bryan P. Harnetiaux, Debra Stephens, Spokane, Amicus Curiae on behalf of Wa. State Trial Lawyers Association.
SANDERS, J.
The question is whether an employee who lacks a statutory remedy for wrongful discrimination may nevertheless assert the common law tort of wrongful discharge. The answer is the employee may, if public policy renders such termination "wrongful."
The trial court dismissed such a claim on summary judgment whereas the Court of Appeals reversed, reinstating the claim. We affirm the Court of Appeals and remand for trial, finding multiple bases in the public policy of this state upon which the tort of wrongful, gender-based discharge may be based.

*903 I.

FACTS
An appeal from an order of summary judgment requires us to view the facts of record in the light most favorable to the nonmoving party. CR 56(c); Sea-Pac Co. v. United Food & Commercial Workers Local Union 44, 103 Wash.2d 800, 801, 699 P.2d 217 (1985). Because the employer (Dudley) brought the motion for summary judgment, we must therefore view the record in the light most favorable to the employee (Roberts).
Lynne Roberts began working at the North End Veterinary Clinic on December 4, 1972 and still worked there in July 1991 when Eric Dudley, D.V.M., purchased and continued operating the clinic. It is undisputed that at all relevant times Dudley never employed eight or more employees at the clinic.
On February 1, 1993 Roberts commenced unpaid maternity leave. On May 1, 1993 Dudley discharged Roberts, claiming her position was no longer available due to a business slowdown. Dudley readvertised the position in May 1994 but when Roberts applied she was refused reemployment. Roberts claims the reason given for her discharge (economic slowdown) was pretextual whereas the real reason for her discharge was that she was pregnant.
Roberts sued Dudley for gender discrimination, initially stating a cause of action under RCW 49.60, but subsequently amended her complaint to state a claim for common law wrongful discharge in violation of the public policy against sex discrimination.
Dudley moved for partial summary judgment to dismiss the wrongful discharge claim. He argued Roberts had no cause of action under state law even if she were discharged because of her gender because Dudley was a small employer, employing fewer than eight persons. The trial court agreed and granted Dudley's motion for partial summary judgment, dismissing the wrongful discharge claim. We denied direct review, transferring the case to the Court of Appeals.
The Court of Appeals reversed the trial court, finding a clear public policy against discrimination, holding a common law cause of action exists for wrongful discharge when the discharge violates the public policy against discrimination. Roberts v. Dudley, 92 Wash.App. 652, 659-60, 966 P.2d 377 (1998). We then granted review.
Dudley relies heavily on this court's decision in Griffin v. Eller, 130 Wash.2d 58, 922 P.2d 788 (1996), arguing Griffin recognized a public policy to protect small employers from discrimination suits, precluding the possibility of a common law cause of action for employment discrimination. Dudley further argues the public policy exception to the employment at-will doctrine should be applied narrowly and cautiously, citing Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 232, 685 P.2d 1081 (1984) and subsequent cases, asserting a common law cause of action for wrongful discharge based on gender discrimination is inconsistent with those cases. Additionally he argues neither the Equal Rights Amendment, Wash. Const. art. XXXI, § 1 (amend.61), nor RCW 49.12.200 creates a source of public policy against discrimination, as neither is directed at private employment. The Washington Defense Trial Lawyers and the Independent Business Association[1] each submitted amicus curiae briefs in support of Dudley.
Roberts argues there is nothing in Griffin, 130 Wash.2d 58, 922 P.2d 788, inconsistent with a common law cause of action for wrongful discharge in violation of a clear public policy against sex discrimination because Griffin did not decide that issue but rather involved a statutory claim under RCW 49.60. Roberts further argues RCW 49.12.200, the law against discrimination (RCW 49.60), and the Equal Rights Amendment[2] all evidence a clear public policy *904 against sex discrimination in employment. Roberts relies on Bennett v. Hardy, 113 Wash.2d 912, 784 P.2d 1258 (1990), and Gardner v. Loomis Armored, Inc., 128 Wash.2d 931, 913 P.2d 377 (1996), to support her claim that there is a common law cause of action for wrongful discharge in violation of the public policy against discrimination. Amicus American Civil Liberties Union of Washington[3] agrees with Roberts, as does the Washington State Trial Lawyers Association which filed an amicus curiae brief arguing this court need only look to the Equal Rights Amendment, to find a clear public policy against discrimination.

II.

ANALYSIS
A. Common Law Wrongful Discharge
An indefinite employment contract is generally terminable at will. Roberts v. Atlantic Richfield Co., 88 Wash.2d 887, 894, 568 P.2d 764 (1977). However in Thompson, 102 Wash.2d 219, 685 P.2d 1081, we recognized an exception to the at-will rule in the form of a common law cause of action in tort for wrongful discharge of an employee where the discharge contravenes "a clear mandate of public policy." Id. at 232, 685 P.2d 1081. The "public policy" for which we search is an authoritative public declaration of the nature of the wrong.
In Thompson we were careful to limit the wrongful discharge cause of action to situations where a public policy was already clearly expressed in the constitution, a statute, or a prior court decision:
"In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy. However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject."
Id. (quoting Parnar v. Americana Hotels, Inc., 65 Haw. 370, 652 P.2d 625, 631 (1982)). As we noted in Thompson, "to state a cause of action, the employee must plead and prove that a stated public policy, either legislatively or judicially recognized, may have been contravened." Thompson, 102 Wash.2d at 232, 685 P.2d 1081. Any finding of public policy must therefore be clearly grounded in legislation or prior jurisprudence to protect employers from frivolous lawsuits, thus balancing the interests of the employer and the employee. Id.
We elaborated on the meaning of a clearly mandated public policy in Dicomes v. State, 113 Wash.2d 612, 782 P.2d 1002 (1989), stating:
"In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively.... Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed."
Id. at 618, 782 P.2d 1002 (quoting Palmateer v. International Harvester Co., 85 Ill.2d 124, 130, 421 N.E.2d 876, 52 Ill.Dec. 13 (1981)).
*905 Gardner, 128 Wash.2d 931, 913 P.2d 377, involved a common law claim for wrongful discharge following the termination of an armored truck driver who left his truck in violation of company policy to rescue a hostage at a bank robbery. Although we found the "situation presented by this case does not fit neatly into ... the categories of [public policy tort] cases previously considered by this court,"[4]id. at 938, 913 P.2d 377, we nevertheless found the truck driver had a cause of action for wrongful discharge based on the public policy in favor of protecting human life. Id. at 944-46, 913 P.2d 377. We there identified four necessary elements upon which a common law claim for wrongful discharge in violation of public policy must be heard:
(1) The plaintiffs must prove the existence of a clear public policy (the clarity element).
(2) The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the jeopardy element).
(3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the causation element).
(4) The defendant must not be able to offer an overriding justification for the dismissal (the absence of justification element).
Id. at 941, 913 P.2d 377 (citations omitted). The first element (determining what is a clear mandate of public policy) is a question of law, Dicomes, 113 Wash.2d at 617, 782 P.2d 1002, and it is this element of the four-part test which is at issue here.
Dudley argues the Court of Appeals decision on review conflicts with Thompson and its progeny, asserting those cases apply the public policy exception to the at-will rule very narrowly. However the rule announced by the Thompson line of cases is that a court may not sua sponte manufacture public policy but rather must rely on that public policy previously manifested in the constitution, a statute, or a prior court decision.[5]Thompson, 102 Wash.2d at 232, 685 P.2d 1081; Dicomes, 113 Wash.2d at 617, 782 P.2d 1002; Gardner, 128 Wash.2d at 936-37, 913 P.2d 377. Thus in Roe v. Quality Transp. Servs., 67 Wash.App. 604, 838 P.2d 128 (1992), the Court of Appeals found there was no clear mandate of public policy pertaining to employee drug testing because there was no statute demonstrating such a public policy. Roe, 67 Wash.App. at 609-10, 838 P.2d 128 ("The Legislature has enacted many statutes specifically regulating employer-employee relationships. The fact that the Legislature has not enacted a statute regulating drug testing by private employers is significant." (Citation omitted.)).
However if a public policy against discriminatory discharge for reasons of gender may be found in the constitution, a statute, or a prior decision of this court, Dudley's argument fails because it is contrary to Thompson.[6]
B. Public Policy Against Sex Discrimination
In Thompson we required a public policy basis for the tort of wrongful discharge to be *906 grounded in the constitution, a statute, or a prior court decision. Roberts argues a public policy against discrimination may be found in all three of these sources.
1. Judicial basis for public policy against discrimination
In Marquis v. City of Spokane, 130 Wash.2d 97, 922 P.2d 43 (1996), we stated, "the purpose of the law [against discrimination] is to deter and to eradicate discrimination in Washington" which has been recognized as "a policy of the highest priority." Id. at 109, 922 P.2d 43 (emphasis added). We made further reference to "[t]his state's strong policy against sex discrimination." Id. In support of these statements we cited previous decisions, namely Mackay v. Acorn Custom Cabinetry, Inc., 127 Wash.2d 302, 309-10, 898 P.2d 284 (1995); Burnside v. Simpson Paper Co., 123 Wash.2d 93, 99, 864 P.2d 937 (1994); and Allison v. Housing Auth., 118 Wash.2d 79, 86, 821 P.2d 34 (1991). Thus in Marquis we affirmed a strong and clear public policy against discrimination. This judicial recognition of the public policy alone fulfills the requirements of Thompson that the policy be clearly based in law. However there are also statutory bases for the policy.
2. Statutory basis for public policy against discrimination
Roberts' argument focuses on RCW 49.12.200 and RCW 49.60.010 as evidence of a statutory public policy against sex discrimination.[7]
(a) RCW 49.12.200
RCW 49.12.200 is headed, "Women may pursue any calling open to men" and states:
That hereafter in this state every avenue of employment shall be open to women; and any business, vocation, profession and calling followed and pursued by men may be followed and pursued by women, and no person shall be disqualified from engaging in or pursuing any business, vocation, profession, calling or employment or excluded from any premises or place of work or employment on account of sex.
RCW 49.12.200[8] (emphasis added). This provision expresses a clear policy against discharge from employment because of sex discrimination and contains no exemption for small employers.
Dudley argues RCW 49.12.200 does not provide a public policy basis for the tort of wrongful discharge because it is not directed at private employers. However such is not apparent from the language of the provision which in fact is categorical in its terms, stating "every avenue" of employment shall be open to women and "no person" shall be disqualified from pursuing "any" career because of sex. RCW 49.12.200. Furthermore the context of the provision indicates it is in fact directed at private employersit is within a chapter entitled, "INDUSTRIAL WELFARE" which deals with conditions of employment in the private sector. 49.12 RCW. RCW 49.12.200 therefore demonstrates a strong public policy against sex discrimination in employment.
*907 Although this statute recognizes a general right to be free of discharge due to sex discrimination, it provides no remedy for the same. Roberts therefore argues the court should imply a remedy for breach of RCW 49.12.200, relying on the Latin maxim ubi jus, ibi remedium ("[w]here there is a right, there is a remedy," Black's Law Dictionary 1520 (6th ed.1990)) and Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) in which the Supreme Court stated:
The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection.
Marbury, 5 U.S. at 163. Roberts notes this court has recognized when a "statute [has] provided a right of recovery, it is incumbent upon the court to devise a remedy." State v. Manuel, 94 Wash.2d 695, 699, 619 P.2d 977 (1980).
RCW 49.12.200 provides strong evidence of the public policy against discharge from employment due to sexual discrimination for which a common law cause of action in tort for wrongful discharge is available.
(b) The law against discrimination, RCW 49.60
A second statutory source of public policy against sex discrimination in employment relied upon by Roberts is the law against discrimination, RCW 49.60. In response Dudley and Amicus Independent Business Association both argue because the law against discrimination explicitly exempts small employers from the statute, it would be illogical to find that statute a source of public policy permitting a common law cause of action for wrongful discharge against such small employers.[9] But ultimately the small employer exception from statutorily created remedies proves the more general rule of public policy at issue here.[10]
But in the section entitled, "Purpose of chapter" the statute provides:
The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of ... sex... [is] a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state.
RCW 49.60.010 (emphasis added). It then goes on to declare the right to be free from discrimination in employment to be a civil right:
The right to be free from discrimination because of ... sex ... is recognized as and declared to be a civil right. This right shall include, but not be limited to:
(a) The right to obtain and hold employment without discrimination[.]
RCW 49.60.030(1). This statutory declaration clearly condemns employment discrimination as a matter of public policy. Nothing in these provisions suggests small employers are exempt from such a policy; to the contrary, RCW 49.60.010 sets forth a policy that discrimination against any citizens should be eradicated.
Furthermore the "exemption" from the statute for small employers is found neither *908 in the purpose section of the statute, in the section dealing with civil rights, nor even in a provision dealing with statutory exemptions, but in the "Definitions" section which states:

As used in this chapter:
. . . .
(3) "Employer" includes any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons, and does not include any religious or sectarian organization not organized for private profit.
RCW 49.60.040 (emphasis added). By this section the legislature narrows the statutory remedies but does not narrow the public policy which is broader than the remedy provided. Thus, the statutory remedy is not in itself an expression of the public policy, and the definition of "employer" for the purpose of applying the statutory remedy does not alter or otherwise undo to any degree this state's public policy against employment discrimination. Cf. Dissent at 913. If it is argued that the exclusion of small employers from the statutory remedy is itself a public policy, that policy is simply to limit the statutory remedy, but is not an affirmative policy to "exempt[ ] small employers from [common law] discrimination suits." Dissent at 913.
The absence of an affirmative policy to exempt small employers from all discrimination suits is, moreover, expressly stated in the statute which specifically mandates it should not be used as a means to bar other types of actions for civil rights violations:
Nothing contained in this chapter shall be deemed to repeal any of the provisions of any other law of this state relating to discrimination because of ... sex ... Nor shall anything herein contained be construed to deny the right to any person to institute any action or pursue any civil or criminal remedy based upon an alleged violation of his or her civil rights.
RCW 49.60.020. Because the statute elsewhere declares the right to hold employment without discrimination to be a civil right, RCW 49.60.030, this section explicitly provides the statute as a whole should not be construed to deny a plaintiff the right to assert a claim for discriminatory discharge. Yet this is precisely the construction that Dudley urges upon the court. But to hold the definition of "employer" for the purposes of RCW 49.60 prevents a plaintiff from asserting the tort of wrongful discharge based on sexual discrimination would be contrary to the clear mandate in RCW 49.60.020.
Bennett v. Hardy, 113 Wash.2d 912, 784 P.2d 1258 (1990) also clarifies that the statutory definition of "employer" does not exclusively limit the policy against discrimination to large employers.
In Bennett the plaintiffs, twin sisters, sued a former employer alleging age discrimination and wrongful discharge. After the discharge of one sister, plaintiffs hired an attorney who informed the employer his discharge of the first plaintiff amounted to age discrimination. Shortly thereafter the employer discharged the second plaintiff. The employer employed fewer than eight employees and therefore was not within the definition of "employer" as set out in the law against discrimination, RCW 49.60. We there recognized an implied cause of action under RCW 49.44.090 which makes age discrimination against an employee between the ages of 40 and 70 an unfair practice. We also held the second plaintiff had established a cause of action for wrongful discharge based on a public policy against retaliation because of her opposition to her employer's discriminatory practices. Although the law against discrimination was not directly applicable, we nevertheless found that it could form a basis for public policy:
Although RCW 49.60 is not applicable here because the defendants do not fit within that chapter's employer definition, the statute does indicate the Legislature's recognition that retaliatory discharge is an unfair employment practice and that seeking legal recourse is a reasonable employee response.
Bennett, 113 Wash.2d at 925, 784 P.2d 1258. We then explicitly considered whether the small employer exemption under RCW 49.60 should apply to bar either the implied cause of action under RCW 49.44.090 or the tort of wrongful discharge when such causes of action were brought against a small employer, holding
the employer size definition of RCW 49.60.040 does not apply outside chapter *909 49.60 and so does not operate to bar either of the claims recognized above.
Bennett, 113 Wash.2d at 929, 784 P.2d 1258. In Bennett we therefore held the definition of "employer" for the purposes of RCW 49.60 did not preclude a common law cause of action for wrongful discharge, and that is our holding today as well. The law against discrimination provides a strong public policy basis for the plaintiff's claim of wrongful discharge,[11] and it certainly does not operate to bar her recovery.[12] We do not construe the statute to discover a statutory remedyclearly there is not one; rather we read the statute to understand its purpose in policy. Thompson, 102 Wash.2d at 232, 685 P.2d 1081 ("`In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose ... of a ... statutory ... scheme.'" (quoting Parnar v. Americana Hotels, Inc., 65 Haw. 370, 380, 652 P.2d 625 (1982) (emphasis added)).
C. Griffin v. Eller
Dudley's primary argument is based on Griffin v. Eller, 130 Wash.2d 58, 922 P.2d 788 (1996), and so we will address the relationship of Griffin to our decision today. Dudley argues Griffin recognized a legitimate public policy to protect small employers from discrimination suits, precluding the possibility of a common law cause of action for employment discrimination.
Griffin involved a legal secretary who was the only full-time employee of a sole-practitioner attorney and who brought suit claiming inter alia sexual harassment in violation of the law against discrimination, RCW 49.60, as well as a separate claim for wrongful termination in violation of public policy. Griffin, 130 Wash.2d at 62, 922 P.2d 788. The trial court granted partial summary judgment dismissing the plaintiff's claims under RCW 49.60, Griffin, 130 Wash.2d at 62, 922 P.2d 788, but permitted the claim of wrongful discharge in violation of public policy to go to the jury. Id. at 71, 922 P.2d 788 (Madsen, J., concurring). The jury found the plaintiff had not proven the wrongful discharge claim and no appeal was taken on this issue. Id. at 72, 922 P.2d 788 (Madsen, J., concurring). However the summary judgment *910 dismissal of the plaintiff's claims under RCW 49.60 was appealed.
The issue in Griffin was therefore whether an employer with fewer than eight employees was exempt from the remedies provided under RCW 49.60 and, if so, whether this violated the privileges and immunities clause of the state constitution, Wash. Const. art. I, § 12. Because the statute defined "employer" as one which employed eight or more, we followed the plain language of this statutory definition, holding an employer with fewer than eight employees was exempt from suit under the provisions of the statute and, further, that the statutory definition of "employer" survived a challenge under the privileges and immunities clause:
We hold employers of fewer than eight employees are statutorily exempt from these remedies provided under RCW 49.60 and conclude the exemption passes constitutional muster.
Griffin, 130 Wash.2d at 61, 922 P.2d 788 (emphasis added). The holding in Griffin was limited to applying and upholding the statutory definition of "employer," which exempts small employers from suit under RCW 49.60. We simply did not consider the possibility of an action in tort for wrongful discharge in violation of public policy in the Griffin opinion.
Dudley cites at length language in Griffin which he argues demonstrates policy reasons for exempting small employers from discrimination suits, both statutory and common law. Dudley further argues Griffin adopted a balance between the public policy against discrimination and a public policy in favor of protecting small employers from discrimination suits and that the Court of Appeals' decision in the present case upset that balance.
In Griffin we stated,
[T]he Legislature may well have been advancing legitimate state purposes by conserving limited state resources and protecting small businesses from private litigation expense, in addition to avoiding the regulatory burden inherent in regulation by the Human Rights Commission, per se.
Griffin, 130 Wash.2d at 66-67, 922 P.2d 788 (emphasis added). And we noted,
The Legislature may have had many reasons to adopt the small employer exemption in RCW 49.60. Certainly the State has a substantial interest in the well-being of small business with regard to the state economy, tax base, and opportunities for employment.... The Legislature could well have concluded burdening so many employers to benefit so few employees was not, on balance, of sufficient public benefit to offset the burden.
Griffin, 130 Wash.2d at 68, 922 P.2d 788 (emphasis added). However the context of these statements was the availability of an enhanced statutory remedy, not the existence of a common law cause of action. Griffin held RCW 49.60.040(3)'s narrow definition of "employer" survived an equal protection challenge under article I, section 12, of the Washington Constitution to which we applied the rational basis test as the appropriate standard of review. Griffin, 130 Wash.2d at 65, 922 P.2d 788. The statements in Griffin regarding possible reasons for the small employer exemption to RCW 49.60 were therefore made in the context of conducting a rational basis review. We did not purport to affirmatively state the public policy reasons behind the small employer exemptionrather we merely reasoned there could be a rational basis to satisfy the applicable standard of review. Therefore, although Griffin does uphold the statutory "exemption" for small employers to suits brought under RCW 49.60, Dudley's argument that Griffin affirmatively establishes a public policy in favor of exempting small employers from common law discrimination suits ultimately fails.[13]
*911 Nor is it inconsistent to follow the narrow definition of "employer" under RCW 49.60.040(3), which has the effect of exempting small employers from suits brought under the law against discrimination, while at the same time recognizing the tort of wrongful discharge in violation of the public policy against discrimination incorporates no such exemption.
First, the law against discrimination establishes the Washington Human Rights Commission and provides a mechanism for an employee to bring a complaint of a violation of the law against discrimination before the commission and before an administrative law judge. RCW 49.60.230-.250. Even if small employers are subject to common law suit for wrongful discharge based on sex discrimination, this court's decision in Griffin will continue to exempt such small employers from administrative proceedings and enhanced statutory remedies.
Second, the law against discrimination is significantly broader than the tort of wrongful discharge. Under this statute an employee may obtain actual damages sustained as a result of discriminatory refusal to hire, workplace discrimination, and discriminatory employment advertising, as well as discriminatory discharge. RCW 49.60.030(2); RCW 49.60.180; see also Martini v. Boeing Co., 137 Wash.2d 357, 971 P.2d 45 (1999) (plaintiff entitled to claim actual damages proximately caused by discrimination in violation of RCW 49.60 even where such discrimination does not amount to constructive discharge). However, the tort of wrongful discharge in violation of public policy clearly applies only in a situation where an employee has been discharged.[14]
Third, a plaintiff can recover "the cost of suit including reasonable attorneys' fees" after successfully asserting a claim under the law against discrimination. RCW 49.60.030(2). However a recovery of attorney fees is not available under this statute to a successful plaintiff in a common law claim for wrongful discharge.
The clear statutory definition, which explicitly defines an "employer" as one which employs eight or more employees, was at the heart of our decision in Griffin. However the common law claim asserted by the plaintiff in the present case is not defined with reference to any such narrow statutory provision. Griffin must therefore be distinguished and does not control. The public policy against gender discrimination is at the core of RCW 49.60, not at its "penumbra." Cf. Dissent at 917. This statute provides an abundantly clear statement of public policy upon which a common law cause of action for wrongful discharge may be predicated.

III.

CONCLUSION
Following Thompson v. St. Regis Paper Co., Gardner v. Loomis Armored, Inc., and Bennett v. Hardy, we find the plaintiff has properly stated a cause of action for the tort of wrongful discharge based on the clearly articulated public policy against sex discrimination in employment. This clearly articulated public policy is based on RCW 49.12.200 and RCW 49.60.010 and has been previously recognized in Marquis v. City of Spokane. The Court of Appeals is affirmed.
SMITH, JOHNSON, ALEXANDER, and IRELAND, JJ., concur.
ALEXANDER, J. (concurring).
I concur with the views expressed by Justice Sanders in the majority opinion he has crafted for the court. I write separately simply to indicate that, in my view, another and more powerful source of public policy against sex discrimination can be found in this state's Equal Rights Amendment (ERA), Wash. Const. art. XXXI (amend.61). Respondents and amici have argued that we should not consider the ERA as a relevant source of public policy, contending that it serves only to prevent sex discrimination by the State. Although I would observe that *912 there is no case from this court that supports that argument, we need not resolve the issue because we are not called upon to enforce a right under our state's constitution. Rather, we are called upon to determine the public policy of the State. I can think of no more appropriate place to glean a state's fundamental policies than its state constitution. In that regard, I am in accord with the view expressed by the California Supreme Court when it ruled that sex discrimination in employment might support claim of tortious discharge in contravention of public policy. It said, "For our purposes here, however, whether article I, section 8 applies exclusively to state action is largely irrelevant; the provision unquestionably reflects a fundamental public policy against discrimination in employmentpublic or privateon account of sex."[1]Rojo v. Kliger, 52 Cal.3d 65, 801 P.2d 373, 389, 276 Cal.Rptr. 130 (1990).
By the same token, our state's ERA must be viewed as a clear statement of fundamental public policy against such discrimination. In light of this policy, which is also embodied in the statutes and case law that Justice Sanders references in the majority opinion, I feel entirely comfortable concurring in the result we reach.
JOHNSON and IRELAND, JJ., concur.
TALMADGE, J. (concurring).
I concur in the result. Lynn Elizabeth Roberts has a cause of action under RCW 49.60.030 and 49.60.180 if we properly construe RCW 49.60.040(3) with respect to its definition of an "employer" under Washington's law against discrimination. See Griffin v. Eller, 130 Wash.2d 58, 72, 922 P.2d 788 (1996) (Talmadge, J., dissenting).[1]
Moreover, I share the view expressed by Justice Alexander in his concurring opinion.
A common law cause of action against wrongful termination of employment for sex discrimination could find its grounding in the overarching public policy of our Equal Rights Amendment, WASH. CONST., art. XXXI (amend.61). That constitutional imperative is a powerful source of public policy forbidding gender discrimination.
But I also share concerns expressed by Justice Madsen in her forceful dissent with respect to a common law cause of action for wrongful discharge based on a public policy founded on general statutory prohibitions against gender discrimination. The painfully convoluted analysis of the majority creates a common law cause of action employing a statute we erroneously construed in Griffin specifically to forbid such a cause of action. I find it curious that the majority surveys and deploys an array of positive law, none of which affords Roberts a cause of action, to inform and support its conclusion that the common law affords Roberts a cause of action. Considerable peril to the doctrine of separation of powers arises when, as here, a court purports to find the genesis of common law remedies among statutes that actually offer no such remedies. This is breathtaking in its implications. The specter of judicial activism is unloosed and roams free when a court declares, "This is what the Legislature meant to do or should have done." It would be wiser to acknowledge our erroneous interpretation of the statute in Griffin and allow the plaintiff here her day in court under RCW 49.60.180.
MADSEN, J. (dissenting).
I dissent. The majority has the noblest of intentions. It is clearly desirable to hold all employers accountable for gender discrimination, regardless of their size. Unfortunately, the Legislature has yet to do so. Instead, *913 the majority has presumed the role of the Legislature and has created a common law cause of action using a statute that specifically prohibits it. It is the function of this court to apply the intent of the Legislature as expressed through its laws. The court exceeds its legitimate powers when it substitutes its own intent for that of the Legislature. See Raynes v. City of Leavenworth, 118 Wash.2d 237, 243, 821 P.2d 1204 (1992) ("[T]he appropriate remedy when legislative action is considered unjust is political.") By allowing a wrongful discharge claim based on a public policy against gender discrimination, the majority has done just that. It has declared that the statutory exemption of small employers in RCW 49.60.040 is contrary to public policy, and has recognized a claim through the common law that is prohibited by the statute.
This court, beginning in Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 232-33, 685 P.2d 1081 (1984), has recognized an exception to the terminable at will doctrine which allows an employee to bring suit for wrongful discharge when that discharge contravenes a clear mandate of public policy. We have recognized four categories of cases in which this exception is generally allowed: (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct (whistleblowing). See Gardner v. Loomis Armored, Inc., 128 Wash.2d 931, 936, 913 P.2d 377 (1996). Employing a flawed analysis, the majority has extended this list to include the discharge of an employee on the basis of gender.
In Thompson, we held that the public policy exception to the employment at will doctrine should be applied narrowly and cautiously. See Thompson, 102 Wash.2d at 232, 685 P.2d 1081. Accordingly, our job in this case is not as easy as determining whether Washington maintains a public policy against gender discrimination. If that were the question, it would simply be a matter of pointing to the judicial opinions and statutes that the majority relies on. Instead, Thompson and its progeny require that there be "a clearly stated" mandate of public policy. Gardner, 128 Wash.2d at 936, 913 P.2d 377 (citing Thompson, 102 Wash.2d at 232, 685 P.2d 1081); see also Dicomes v. State, 113 Wash.2d 612, 617, 782 P.2d 1002 (1989) ("[T]he employee has the burden to show that the discharge contravened a clear mandate of public policy.") In this case, the mandate is not so clear. It is muted by the contravening policy of protecting small employers from discrimination suits reflected in RCW 49.60.040.
The majority relies on three sources of public policy to create the common law cause of action in tort for wrongful discharge. Most disingenuous among the majority's efforts to find a source of public policy to create this exception to the terminable at will doctrine is its use of RCW 49.60the Washington law against discrimination (WLAD) despite its exemption for employers of fewer than eight employees. See RCW 49.60.040(3). Strangely, the majority reasons that the definitions section of a statute cannot be a source of the public policy derived from that statute. See Majority at 907-908. It therefore concludes that while the prohibition on gender discrimination in the statute expresses public policy, the exemption for small employers does not. See id. This is in direct conflict with this court's decision in Griffin v. Eller, 130 Wash.2d 58, 922 P.2d 788 (1996), where we recognized that the Legislature had a legitimate state interest in exempting small employers from discrimination suits.[1] Furthermore, it plainly conflicts with principles of statutory interpretation.
*914 We have written that "[i]n construing statutes, the primary objective is to carry out the intent of the Legislature.... In so doing, legislative definitions provided in the statutes generally control." American Legion Post No. 32 v. City of Walla Walla, 116 Wash.2d 1, 8, 802 P.2d 784 (1991) (citing In re Estate of Little, 106 Wash.2d 269, 283, 721 P.2d 950 (1986); City of Seattle v. Shepherd, 93 Wash.2d 861, 866, 613 P.2d 1158 (1980)). Moreover, "[a] statute cannot be construed so that an entire provision is meaningless, unless necessary to save the statute or act from constitutional infirmity, or to reconcile conflicting statutes." Childers v. Childers, 89 Wash.2d 592, 596-97, 575 P.2d 201 (1978) (citations omitted). This is because we "presume that the legislature did not engage in vain and useless acts and that some significant purpose or object is implicit in every legislative enactment." Oak Harbor Sch. Dist. v. Oak Harbor Educ. Ass'n, 86 Wash.2d 497, 500, 545 P.2d 1197 (1976) (citing Kelleher v. Ephrata Sch. Dist. 165, 56 Wash.2d 866, 355 P.2d 989 (1960)).
The majority also relies on the language in the WLAD which states that the statute is not meant to limit other types of action for sex discrimination. It reasons that because the law declares that it is a civil right to be free from discrimination in employment, the small employer exemption cannot preclude a civil action. This logic does not hold. The civil right is created in terms of employment by employers of eight or more persons. It is illogical to conclude that the Legislature intended to both protect small employers and subject them to liability in the same statute. See Alderwood Water Dist. v. Pope & Talbot, Inc., 62 Wash.2d 319, 321, 382 P.2d 639 (1963) ("On numerous occasions this court has indicated that a statute should be construed as a whole in order to ascertain legislative purpose, and thus avoid unlikely, strained or absurd consequences ...." (emphasis added)).
Thompson recognized that the "narrow public policy exception" to the terminable at will doctrine "balances the interest of both the employer and employee." Thompson, 102 Wash.2d at 232, 685 P.2d 1081. In this case, the balancing of interests is expressly embodied in the statute. The Legislature chose not to enact a blanket statute that prohibited gender discrimination in all employment. Apparently, it perceived dangers in subjecting small employers to this type of process and litigation. As with all statutes, RCW 49.60 represents a balance of interests. It is the function of a Legislature to balance the varying interests of its citizenry. See Burkhart v. Harrod, 110 Wash.2d 381, 385, 755 P.2d 759 (1988) ("The Legislature is uniquely able to hold hearings, gather crucial information, and learn the full extent of the competing societal interests."). It is not the function of the judiciary to tip that balance when it is so inclined, even when it believes that the Legislature is wrong.
As the majority acknowledges, other states have considered questions similar to the one in this case, and have produced mixed results. Those decisions upholding small employer exemptions in the face of the statutory policy to which they apply are clearly less strained in their analyses, however, than those that read the exemptions out of the policy. Two cases are instructive. In Brown v. Ford, 905 P.2d 223 (Okla.1995), relied upon in Griffin for its "strikingly similar" fact pattern, see Griffin, 130 Wash.2d at 67, 922 P.2d 788, the Supreme Court of Oklahoma refused to recognize a common law tort of wrongful discharge against an employer who was exempt under an antidiscrimination statute similar to RCW 49.60. The court noted that because the plaintiff's "sexual harassment claim does not fall within the statute's criteria for actionability  her workplace having less than fifteen employees  she is not shielded by any legislatively articulated public policy protection." Brown, 905 P.2d at 228. Accordingly, the court held that "[t]he body of our common law, which serves to supplement the corpus of statutory enactments, *915 is powerless to abrogate the latter, either in whole or in part." Id.
The California Supreme Court reached a similar conclusion on a claim alleging age discrimination under California Fair Employment and Housing Act, which defines an "employer as a person `regularly employing five or more persons....'" Jennings v. Marralle, 8 Cal. 4th 121, 32 Cal.Rptr.2d 275, 876 P.2d 1074, 1076 (1994) (quoting CAL. GOV. CODE § 12926(d)). It found that since that state's small employer exemption was enacted at the same time as the other provisions of the antidiscrimination law, it was inseparable from the public policy expressed by the statute. 32 Cal.Rptr.2d 275, 876 P.2d at 1076. The court, therefore, found "that there presently exists no `fundamental policy' which precludes age discrimination by a small employer" and would serve as grounds for an exception to the terminable at will doctrine. Id. In another case, the California Supreme Court held that "when the constitutional provision or statute articulating a public policy also includes certain substantive limitations in scope or remedy, these limitations also circumscribe the common law wrongful discharge cause of action." City of Moorpark v. Superior Court, 18 Cal.4th 1143, 1159, 77 Cal.Rptr.2d 445, 959 P.2d 752 (1998).
Griffin affirmed the legislative intent to exempt small employers from a private cause of action created under the 1973 amendment to the WLAD. Moreover, it refused to find that "the Legislature would have passed the statute absent the small employer exemption." Griffin, 130 Wash.2d at 69, 922 P.2d 788. The Legislature can be presumed to be aware of the decision in Griffin and its effect. See Buchanan v. International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers, 94 Wash.2d 508, 511, 617 P.2d 1004 (1980) (citing State v. Fenter, 89 Wash.2d 57, 569 P.2d 67 (1977); Daly v. Chapman, 85 Wash.2d 780, 539 P.2d 831 (1975)). "The legislature, within constitutional constraints, is the body to make policy decisions on this matter. The failure of the legislature to amend the statute ... since the ... decision was rendered convinces us that it was and is the policy of the legislature to concur in that result." 94 Wash.2d at 511, 617 P.2d 1004.
Accordingly, if Griffin is not sufficient to clarify that the Legislature intended to protect small employers from private discrimination actions, the Legislature's recent failure to pass two bills during the 1999 legislative session is. Bill reports show that both bills were proposed in direct response to this court's decision in Griffin. Senate Bill 5130 would have eliminated the exception for small employers, by including within the scope of RCW 49.60 those employing "one or more persons," and adding to RCW 49.60.010 what the majority already finds therea positive declaration "that all employees are entitled to a workplace that is free from discrimination." S.B. 5130, at 2 (emphasis added). Senate Bill 5130 died in the committee to which it was originally referred, the Senate Judiciary Committee. See 1 Legislative Digest and History of Bills, 56th Leg., Reg. Sess. 45 (Wash.1999). Engrossed Senate Bill 5337 would have created a task force to study and make recommendations on employment discrimination, focusing on small businesses. Engrossed Senate Bill 5337 passed the Senate 42-6, after receiving testimony in opposition from organizations representing small business interests who argued that it would create too big of a burden for small businesses,[2] but failed to pass out of the House Judiciary Committee. See id. at 118; S.B. Rep. ESB 5337, at 2 (Wash.1999). The Legislature thus reaffirmed its policy of protecting small businesses against discrimination suits.[3]See, e.g., Burkhart, 110 *916 Wash.2d at 390, 755 P.2d 759 (noting that the Legislature had considered bills relating to the subject of the case "in its most recent session" and that "[a]ccordingly, there is no reason for the judiciary to take on a more creative role in usurping powers of legislation."). However, the majority impatiently now accomplishes by judicial fiat what legislators have, thus far, failed to do.
In sum, the majority would conclude that RCW 49.60 provides a clear mandate of public policy to allow a gender discrimination suit against a small employer. This public policy against gender discrimination is apparently enough to overcome the Legislature's enactment of the small employer exemption in 1949, see Laws of 1949, ch. 183, § 3(b)(i), its refusal to amend the exemption when it created a private cause of action under the law in 1973, see Laws of 1973, ch. 141, § 3(2); this court's recognition of the legislative intent in Griffin; and the recent failure of two bills that would have exposed small employers to liability. To me, this does not indicate a clear mandate of public policy opening up small employers to discrimination suits. To the contrary, the legislative and judicial records indicate a clear mandate of public policy to protect the small employer.
In addition to the WLAD, the majority briefly cites RCW 49.12.200 as a source of public policy against gender discrimination to support a claim for wrongful discharge. I would not reach this statute. Roberts concedes that she did not raise it at the trial court or the Court of Appeals and, indeed, she does not argue the question of its applicability in her answer to the Dudleys' petition for review  only raising it in her supplemental brief. See Supplemental Br. of Resp't at 18. This is not proper briefing before this court. See RAP 13.4(d) ("A party may file an answer to a petition for review. If the party wants to seek review of any issue which was not raised in the petition for review[ ] that party must raise that new issue in an answer." (emphasis added)); RAP 13.7(b) ("[T]he Supreme Court will review only the questions raised in ... the petition for review and the answer, unless the Supreme Court orders otherwise upon the granting of the ... petition." (emphasis added)).
Even if considered, RCW 49.12.200 does not support the majority. While RCW 49.12.200 does create a right not to be excluded from a profession because of sex, the only cases applying this law suggest that it is aimed at state action rather than at private employers. See State v. Brown, 7 Wash. 10, 34 P. 132 (1893); J.S.K. Enter., Inc. v. City of Lacey, 6 Wash.App. 43, 492 P.2d 600 (1971). In any event, while RCW 49.12.200 was enacted in 1890, the Legislature determined in 1973 that the law as it existed did not provide enough protection against private gender discrimination in employment, and so amended RCW 49.60 to do so. See Laws of 1973, ch. 141, § 3. There would have been no need for the Legislature to amend RCW 49.60 to apply to gender discrimination if RCW 49.12.200 applied to private employment in addition to state action. Again, we "presume that the legislature did not engage in vain and useless acts and that some significant purpose or object is implicit in every legislative enactment." Oak Harbor Educ. Ass'n, 86 Wash.2d at 500, 545 P.2d 1197. We must thus assume that the Legislature was aware of the protection afforded under RCW 49.12.200 when it amended RCW 49.60 in 1973, and that it therefore intended to create a different form of protection than that provided by the existing law. See Price v. Kitsap Transit, 125 Wash.2d 456, 463, 886 P.2d 556 (1994) (Legislature presumed to know the law in the area in which it is legislating); Baker v. Baker, 91 Wash.2d 482, 486, 588 P.2d 1164 (1979).
Because RCW 49.12.200 apparently applies to state action and not to private employers, it cannot be a source of public policy against gender discrimination by small employers. Even if it does indicate a broader policy against gender discrimination as a whole, the public policy found in the statute is not specific enough to trump the small employer exemption in RCW 49.60.040. The effect of *917 the majority's position is to make the exemption for small employers "a vain and useless thing ... and all reference to them is an idle expression carrying no weight to extend or limit the operation of law." Spring Water Co. v. Town of Monroe, 55 Wash. 195, 198, 104 P. 202 (1909). This despite the fact that "[t]he intent of lawmakers must be abstracted from a consideration of all the provisions of an act" like RCW 49.60. Graham v. State Bar Ass'n, 86 Wash.2d 624, 627, 548 P.2d 310 (1976) (emphasis added). In light of this precedent, one shudders to imagine the policy "penumbras" of other statutes, entirely unforeseen by the Legislature, that make the limitations of the statutes themselves irrelevant and that litigants could now argue support their claims. "Just because we do not think the legislators have acted wisely or responsibly does not give us the right to assume their duties or to substitute our judgment for theirs. The judiciary is the branch of government that is empowered to interpret statutes, not enact them." Hillis v. Department of Ecology, 131 Wash.2d 373, 390, 932 P.2d 139 (1997). I respectfully dissent.
GUY, C.J., concurs.
NOTES
[1] Independent Business Association was joined by the Association of Washington Business and the National Federation of Independent Business in its amicus brief. (These amici curiae will hereinafter be referred to as "amicus Independent Business Association.")
[2] The Equal Rights Amendment (ERA) to the Washington Constitution states:

Equality of rights and responsibility under the law shall not be denied or abridged on account of sex.
Wash. Const. art. XXXI, § 1. For the purposes of this case it is not necessary to decide whether the ERA may form the basis for a tort of wrongful discharge in violation of public policy when suit is brought against a private employer. We will not decide a case on constitutional grounds if it can be decided on a nonconstitutional basis. Weiss v. Glemp, 127 Wash.2d 726, 730, 903 P.2d 455 (1995); see also United States v. Locke, 471 U.S. 84, 92, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985). Because we find that Marquis v. City of Spokane, 130 Wash.2d 97, 922 P.2d 43 (1996), the law against discrimination (RCW 49.60), and RCW 49.12.200 all evidence a strong and clear public policy against discrimination, it is unnecessary to determine whether the ERA is also a source of this public policy.
[3] The American Civil Liberties Union of Washington was joined by the Washington Employment Lawyers Association in its amicus brief. (These amici curiae will hereinafter be referred to as "amicus ACLU.")
[4] The court found that

public policy tort actions have generally been allowed in four different situations: (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing.
Gardner, 128 Wash.2d at 936, 913 P.2d 377.
[5] Thus it is quite natural, not "curious," that we look to positive law to define when a termination is "wrongful" rather than benign. Cf. Concurrence at 912 (Talmadge, J.). Unfortunately Justice Talmadge's concurrence confuses the absence of a statutory remedy with the absence of a statutory policy. However, the policy may be broader in declaration than the remedy provided by the statute.
[6] Amicus Independent Business Association cites Schonauer v. DCR Entertainment, Inc., 79 Wash. App. 808, 905 P.2d 392 (1995), claiming it demonstrates there cannot be a tort of wrongful discharge based on a public policy against discrimination. Although the court in Schonauer denied the plaintiff a wrongful discharge cause of action, it did so with only cursory analysis and without the benefit of argument that there was a statutory basis for the public policy. Schonauer, 79 Wash.App. at 827, 905 P.2d 392. Schonauer is therefore unhelpful to the determination of the present case.
[7] Roberts and Amicus American Civil Liberties Union cite several statutes evidencing a public policy against gender discrimination. Some of these statutes support a public policy against sex discrimination by governmental entities. E.g., RCW 28A.640.010 ("Inequality in the educational opportunities afforded women and girls at all levels of the public schools in Washington state is a breach of Article XXXI, section 1, Amendment 61, of the Washington state Constitution, requiring equal treatment of all citizens regardless of sex. This violation of rights has had a deleterious effect on the individuals affected and on society."); RCW 74.04.515 (prohibiting discrimination based on sex for the purposes of public assistance); RCW 2.36.080 (prohibiting exclusion from jury pools based on gender). Other statutes apply a public policy against sex discrimination to the private sector. RCW 48.30.300(1) ("No person or entity engaged in the business of insurance in this state shall refuse to issue any contract of insurance or cancel or decline to renew such contract because of ... sex...."); RCW 49.12.175 (prohibiting sex discrimination in the payment of wages). For a full list of statutes cited see Supplemental Br. of Resp't at 5, and Br. of Amicus American Civil Liberties Union at 15 n.6.
[8] RCW 49.12.200 was first enacted in 1890. Laws of 1889-90, at 519.
[9] The dissent also argues the defeat of two recent bills, SB 5130 and ESB 5337, 56th Leg., Reg. Sess. (1999), evidence the intent of the legislature not to subject small employers to any discrimination suits. However this argument is too broad. These bills, if enacted, would have subjected small employers to statutory remedies. Their failure, however, does not signify any retraction of a more fundamental public policy against wrongful discrimination in the workplace. Senate Bill 5130 would have changed the definition of "employer" in RCW 49.60.030 to any person employing one or more employees, thus effectively removing the small employer "exemption" from the statute. If this demonstrates any legislative intent at all, it simply indicates if the bill had been enacted the legislature would have removed the small employer "exemption" to the provisions of RCW 49.60. For the same reason ESB 5337, which proposed a task force to examine the definition of "employer" for the purposes of RCW 49.60, provides no relevant evidence of legislative intent.
[10] The dissent attacks a straw man when it argues there is no statutory remedy here based upon the narrow definition of "employer." That, however, is just the pointthe legislative policy against discrimination in employment is broader than its remedy. But the statutory remedy, or lack thereof, does not define the policy. Dissent at 913-914.
[11] Courts in other states have considered strikingly similar issues. Amicus Independent Business Association cites two cases where courts have declined to recognize a tort of wrongful dischargeBrown v. Ford, 905 P.2d 223 (Okla. 1995) and Jennings v. Marralle, 8 Cal. 4th 121, 32 Cal.Rptr.2d 275, 876 P.2d 1074 (1994). Br. of Amicus Independent Business Association at 8-9. However, other courts have found a clear public policy against discrimination in state antidiscrimination statutes even although those statutes exempt small employers. Molesworth v. Brandon, 341 Md. 621, 637, 672 A.2d 608, 616 (1996) ("We hold ... that Art. 49B, § 14 [of the Maryland code, making discriminatory discharge an unlawful employment practice] provides a clear statement of public policy sufficient to support a common law cause of action for wrongful discharge against an employer exempted by Art. 49B, § 15(b). Section 15(b) merely excludes small employers from the administrative process of the Act, but does not exclude them from the policy announced in § 14." (emphasis added)); Kerrigan v. Magnum Entertainment, Inc., 804 F.Supp. 733, 736 (D.Md.1992) ("Because art. 49B [of the Maryland code] evidences a clear policy against employment discrimination, and because this Court finds no legislative intent on the part of the General Assembly to exempt small businesses from the policy animating art. 49B, the Court finds that [a] ... wrongful termination claim based on alleged discrimination will lie in Maryland...." (emphasis added)); Collins v. Rizkana, 73 Ohio St.3d 65, 74, 652 N.E.2d 653, 661 (1995) ("[I]n the absence of legislative intent to preempt common-law remedies, we can perceive no basis upon which to find that R.C. 4112.01(A)(2) [exempting employers with fewer than four employees from the antidiscrimination statute] forms part of the public policy reflected in R.C. 4112.02(A) [making discrimination in employment an unlawful practice]. Therefore, we cannot find it to be Ohio's public policy that an employer with three employees may condition their employment upon the performance of sexual favors while an employer with four employees may not."); Williamson v. Greene, 200 W.Va. 421, 490 S.E.2d 23, 33 (1997) ("[T]he West Virginia Human Rights Act clearly constitutes this state's `substantial public policy' against sex discrimination and sexual harassment in employment, including retaliatory discharge based thereon. Although the Act does not provide this plaintiff with a statutory remedy, it nevertheless sets forth a clear statement of public policy sufficient to support a common law claim for retaliatory discharge against an employer ....") (footnote omitted) (emphasis added).
[12] See discussion of Griffin v. Eller, infra at 909-911.
[13] Contrary to the reasoning of Justice Talmadge's concurrence, which apparently still favors his own dissent in Griffin to the court's majority opinion in that case, the precedent which binds the court here is that spoken by the majority in Griffin, not the dissent. For the reasons indicated therein, Griffin was correctly decided, and we distinguish here the policy underlying a statute from the remedy, or lack thereof, provided by the statute to accomplish that policy. If the concurrence concludes the Griffin precedent leads to a result different from that stated here, the concurrence should be with the dissent, not with this majority.
[14] We do not here recognize a tort of "gender discrimination." Cf. Dissent at 916. Rather, we recognize the long-established tort of wrongful discharge may be established when the discharge is wrongfully accomplished on account of gender.
[1] Article I, section 8 of the California Constitution provides: "`A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin.'" Rojo, 276 Cal.Rptr. 130, 801 P.2d at 388.
[1] Under our policy of stare decisis, I am ordinarily exceedingly reluctant to overturn an opinion of so recent a vintage. See, e.g., State v. Berlin, 133 Wash.2d 541, 554, 947 P.2d 700 (1997) (Alexander, J., dissenting).

We will, however, depart from prior precedent if it is demonstrably "incorrect and harmful[.]" Berlin, 133 Wash.2d at 547, 947 P.2d 700. The majority opinion here tacitly concedes the Court's ruling in Griffin was incorrect and harmful for victims of illegal discrimination when the majority discerns a court-created tort based on violation of public policy.
[1] The majority latches onto our decision in Marquis v. City of Spokane, 130 Wash.2d 97, 922 P.2d 43 (1996), as a means of bypassing Griffin by finding a "[j]udicial basis for public policy against discrimination." See Majority at 906. It points to salutatory statements that we made in Marquis concerning the policy inherent in RCW 49.60, without noting that those statements were not made in connection with a case that involved, as we have here and had in Griffin, the question of whether that statute or the policy therefrom is applicable to a small employer. The majority makes no effort to reconcile what it now declares is the expansive reach of those statements in Marquis with our holding in Griffin, which was decided on the same day. While the majority proclaims that "in Marquis we affirmed a strong and clear public policy against discrimination[,]" Majority at 906, it does not add the necessary caveat that we did so only with respect to a nonexempt employer. Marquis is simply inapposite here.
[2] Perhaps next time they will know to lobby this court instead.

Where is the line that divides the province of the court from that of the legislature in a matter of this sort? The court is to expound and administer the laws, and there the judicial function and duty end.... When the judge has declared all the law that enters into the problem, how much is still left to the determination of the legislator?
State ex rel. Reclamation Bd. v. Clausen, 110 Wash. 525, 533, 188 P. 538, 14 A.L.R. 1133 (1920) (quoting approvingly Perry v. City of Keene, 56 N.H. 514, 531 (1876)).
[3] Remarkably, the majority concedes this, writing of SB 5130 that if its defeat "demonstrates any legislative intent at all, it simply indicates [that] if the bill had been enacted the legislature would have removed the small employer `exemption' to the provisions of RCW 49.60." Majority at 907 n.9. This concession makes the majority's position inexplicable.