592 S.E.2d 824

**Stephanie D. BAUGHMAN, individually and on behalf of all similarly situated individuals, Plaintiff Below, Appellant,**

v.

**WAL–MART STORES, INC., Defendant Below, Appellee.**

No. 31312.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 18, 2003.

Decided Dec. 4, 2003.

---

Michael J. Florio, Esq., Clarksburg, West Virginia, Attorney for Appellant.

Sandra K. Law, Esq., Schrader, Byrd & Companion, Wheeling, West Virginia Niall A. Paul, Esq., Eric W. Iskra, Esq., Spilman, Thomas & Battle, Charleston, West Virginia, Attorneys for Appellee.

**PER CURIAM:**

In the instant case, we uphold a grant of summary judgment by a circuit court in a case alleging invasion of privacy.

**I.**

In the instant case, the appellant, Stephanie Baughman, filed suit on July 5, 2001, against the appellee Wal–Mart Stores, Inc., in the Circuit Court of Harrison County. The appellant's complaint stated that the appellant was required to give a urine sample prior to her employment by a Wal–Mart store. That is, the appellant was offered a job by Wal–Mart—but prior to the appellant's starting work, Wal–Mart required her (and allegedly all other prospective employees) to first give a urine sample that Wal–Mart would test for results that may indicate illegal drug use. The appellant gave the urine sample and thereafter began working at Wal–Mart; she later left her employment at Wal–Mart for reasons apparently unrelated to the instant case.

The appellant's complaint stated that Wal–Mart's pre-employment requirement of giving a urine sample for drug testing after being offered a job, but before starting to work, was *per se* an actionable invasion of the appellant's privacy; and that Wal–Mart had, by requiring the sample, caused the appellant "embarrassment, indignity, humiliation, annoyance, inconvenience and other general damages." [1]

Wal–Mart filed an answer admitting that the appellant had been required to submit a urine sample for drug testing, but denying that there was any illegality in or harm from this requirement. Thereafter, some limited amount of discovery took place. The appellant then filed a motion for partial summary judgment on the issue of liability. Wal–Mart filed a cross-motion for summary judgment on the same issue. The circuit court granted summary judgment to Wal–Mart, holding that the appellant had not shown an actionable invasion of privacy in Wal–Mart's requiring her to submit a urine sample for drug testing before she began to work for Wal–Mart. [2]

**II.**

We review a grant of summary judgment *de novo*.

The appellant's principal argument is based on our holding in *Twigg v. Hercules Corp.*, 185 W.Va. 155, 406 S.E.2d 52 (1990). In *Twigg*, this Court stated in Syllabus Points 1 and 2:

1. It is contrary to public policy in West Virginia for an employer to require *an employee* to submit to drug testing since such test portends an invasion of an individual's right to privacy.

2. Drug testing will not be found to be violative of public policy grounded in the potential intrusion of a person's right to privacy where it is conducted by an employer based upon reasonable good faith objective suspicion of *an employee's* drug usage or while *an employee's* job responsibility involves public safety or the safety of others. [emphasis added].

---

1. Wal–Mart removed the case to federal court, and then voluntarily remanded the case to state court. The appellant in her complaint also sought to represent a class of persons similarly situated. Neither the removal/remand or class-related aspects of the case are implicated in or pertinent to our decision.

2. The appellee did not receive any adverse action from Wal–Mart as a result of the urine sample that she gave, so neither the circuit court nor this Court was or is called upon to address any issues involving policies or practices that Wal–Mart may have or used with respect to the methods, scope, nature, results, or range of consequences, if any, associated with pre-employment urine sample testing; nor is there any developed record on these practices and policies. Nor are there any allegations that the law against disability discrimination is implicated in the instant case.

According to Befort, Stephen, *Pre–Employment Screening and Investigation: Navigating Between a Rock and a Hard Place*, 14 Hofstra Labor Law Journal 365, 394–398 (1997), in most if not all states that permit and regulate some form of pre-employment drug testing by statute, the right to the results of the tests, to request confirmatory tests, and the opportunity to challenge the results is afforded. We believe these practices are desirable, and adherence to such practices should be a factor in evaluating the fairness of any testing policies and practices.

Notably, and for the purposes of our holding in the instant case, importantly, *Twigg* was a case involving the issues arising from an employer's requirement of drug testing by *current, existing* employees—not by *prospective* employees who had not begun employment.

Our decision in *Twigg* relied upon *Roach v. Harper*, 143 W.Va. 869, 105 S.E.2d 564 (1958), in which we held in Syllabus Point 1 that:

1. The right of privacy, including the right of an individual to be let alone and to keep secret his private communications, conversations and affairs, is a right the unwarranted invasion or violation of which gives rise to a common-law right of action for damages.

In *Roach*, we stated:

The "right of privacy" has been defined as the right of an individual to be let alone, to live a life of seclusion, or to be free from unwarranted publicity. The right of privacy is closely related to many other subjects of law, e. g., libel and slander, literary property, wrongful search and seizure, compulsory physical examination and eavesdropping. Though different in some respects from such subjects, the right to privacy is an individual right that should be held inviolate. To hold otherwise, under modern means of communication, hearing devices, photography, and other technological advancements, would effectively deny valuable rights and freedoms to the individual.

The usual argument against the existence of the right of action is that it is for a wrong or tort for which no recovery was permitted at common law. We need not here, however, theorize as to the basis for the existence of the right. As above pointed out, that existence has been affirmed by the very great weight of authority. It may not be amiss, however, to quote language of Judge Parker in the opinion in *Barnes Coal Corporation v. Retail Coal Merchants Ass'n*, 4 Cir., 128 F.2d 645, 648: " * * * It must be remembered, in this connection, that the common law is not a static but a dynamic and growing thing. Its rules arise from the application of rea-son to the changing conditions of society. It inheres in the life of society, not in the decisions interpreting that life; and, while decisions are looked to as evidence of the rules, they are not to be construed as limitations upon the growth of the law but as landmarks evidencing its development. As was said in *Hurtado v. [People of State of] California*, 110 U.S. 516, 530, 4 S.Ct. [111], 118, 28 L.Ed. 232, "Flexibility and capacity for growth and adaptation is the peculiar boast and excellence of the common law" * * *." [citations omitted].

143 W.Va. at 876–877, 105 S.E.2d at 568. *See also* Syllabus Point 3, *Sutherland v. Kroger Co.*, 144 W. Va. 673, 110 S.E.2d 716 (1959) ("An illegal search by a private individual is a trespass in violation of the right of privacy."); *Cordle v. General Hugh Mercer Corp.*, 174 W.Va. 321, 325 S.E.2d 111 (1984) (imposing polygraph requirement on employees is contrary to public policy).

The appellant argues that this Court should overrule the circuit court's order granting summary judgment by extending the principles set forth in *Twigg* to apply categorically to all instances of employment-related drug testing—both during employment, and pre-employment.

The appellee responds by arguing that the balancing between an individual's right of privacy and the needs and rights of a private employer is substantially different in the pre-employment context, and that therefore the holding in *Twigg* is both inapposite and inapplicable to the instant case.

We concluded in *Twigg* that in the case of current employment, the employee's right of privacy is not outweighed by the employer's rights and interests unless specific heightened safety concerns or well-grounded individualized suspicion is present—analogous to the kind of probable cause necessary for a warrant—and clearly outweighs the employee's important right to privacy.

■ However, in the pre-employment context, it is apparent—although not necessarily dispositive in every case—that a person clearly has a lower expectation of privacy. Employers regularly perform pre-employ-

ment background checks, seek references, and require pre-employment medical examinations, etc., that are far more intrusive than what would be considered tolerable for existing employees without special circumstances. Giving a urine sample is a standard component of a medical examination.

In light of the important issues involved, we are not prepared in deciding this case to paint with an unnecessarily broad brush—and to say that under no set of particular circumstances could a person successfully assert an invasion of privacy-based claim arising from a particular pre-employment drug testing requirement. Moreover, we strongly affirm our holding in *Twigg* regarding the appropriate balance that must be struck between privacy rights and employer's interests for an employer's current employees. We also point out that our ruling today relates only to the case of a private employer; and nothing in this opinion is to be seen as indicative of the scope of the legal rights of or restraints upon a public employer, the conduct of which directly implicates, *inter alia*, the constitutional prohibitions against searches without probable cause.

■ In this regard, we are firmly committed to the unique and essential role of courts in protecting the individual's private life and "space" from well-intentioned but ultimately oppressive, insulting, degrading, and demeaning intrusions—whether these intrusions come from the omnipresent forces of the state, or from the equally omnipresent and inescapable forces of the market.

The principle and right of personal autonomy and privacy is just as important as the more traditional civil rights of freedom of assembly, speech, and religion. It is central to our constitutional system of government. Its protection needs strong and sometimes controversial and fearless, bulwarks—especially in an age of ever-more sophisticated and intrusive technologies, and cries for heightened surveillance and monitoring of every aspect of life. It is a crucial role of courts in a constitutional system to see that these bulwarks of privacy, autonomy, and ultimately freedom remain strong—even in the face of short-sighted efforts to erode them, or to make an end-run around them.[3]

Having said this, we agree with the circuit court that the principles of *Twigg* do not extend to the pre-employment situation and thus do not preclude the granting of summary judgment to Wal–Mart in the instant case. We conclude that the appellant put forth no facts that would show that her right to privacy was violated in the instant case simply as a result of Wal–Mart's requiring her, prior to starting work, to give a urine sample for drug testing purposes.

■ In making our decision, we are particularly mindful of the specter of a court-created "slippery slope" in this evolving area of law. Courts must guard against the inadvertent self-fulfilling "shrinking" of "expectations of privacy"—as incremental intrusions into areas of personal life and inviolability, traditionally viewed as private and protected, may perforce be validated in the light of

**3.** In this regard, the following quotation from *Loder v. City of Glendale*, 14 Cal.4th 846, 921–922, 927 P.2d 1200, 1249, 59 Cal.Rptr.2d 696, 745 (1997) (Kennard, J., concurring and dissenting) (a case that involved drug testing of public employees) raises important and fundamental issues that cannot be lost sight of in balancing the competing interests in any drug testing case:

> This case conjures up visions of an Orwellian nightmare in which the government, through intrusive bodily testing, microscopically scrutinizes the most intimate aspects of the bodies and lives of all individuals seeking government positions, justifying such scrutiny on the ground that the intrusions will enhance efficiency, productivity, and cost-effectiveness. In the words of one commentator: "[B]y submit-

> ting millions of Americans to systematic biochemical surveillance of their blood or urine, our level of expectations of individual privacy will greatly diminish, and we will, thereby, surrender a considerable amount of autonomy, dignity and sovereignty. We [will] have allowed the government and employers to transcend an invisible shield which stood at the edge of our bodies. . . . John Stuart Mill's aphorism, 'Over himself, over his own body and mind, the individual is sovereign,' no longer sounds relevant." (*Proposal for a Substance Abuse Testing Act: The Report of the Task Force on the Drug–Free Workplace, Institute of Bill of Rights Law* (1991) 33 Wal–Mart. & Mary L.Rev. 5, 3334 [Comment of task force member Cornish, italics omitted].)

similar and tolerated past erosions of the private sphere. It is for this reason that we necessarily must have some degree of hesitancy with respect to our ruling in the instant case—as we are putting a "stamp of approval" on a type of intrusion that we have not sanctioned before (nor have we before disapproved it). Time will tell if we can hold to our resolve not to go further down a slippery slope.

IV.

*Conclusion*

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.