# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2024 Term

_____

No. 23-ICA-212

_____

FILED

**June 5, 2024**

released at 3:00 p.m.
ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

LISA R. DANIELS
Plaintiff Below, Petitioner,

v.

DAL GLOBAL SERVICES, LLC,
Defendant Below, Respondent.

_____

Appeal from the Circuit Court of Kanawha County
Honorable Joanna Tabit, Judge
No. 21-C-650

AFFIRMED
_____

Submitted: April 16, 2024
Filed: June 5, 2024

W. Scott Evans, Esq.
Scott Evans Law, PLLC
Charleston, West Virginia

Kurt E. Entsminger, Esq.
Addair Entsminger PLLC
Charleston, West Virginia
Counsel for Petitioner

Laura C. Bunting, Esq.
Marla N. Presley, Esq.
Andrew F. Maunz, Esq.
Jackson Lewis P.C.
Pittsburgh, Pennsylvania
Counsel for Respondent

JUDGE GREEAR delivered the Opinion of the Court.

GREEAR, JUDGE:

Petitioner, Lisa R. Daniels ("Ms. Daniels") appeals the May 1, 2023, order of the Kanawha County Circuit Court, which denied respondent's, DAL Global Services, LLC, ("DAL") Motion to Alter and Amend Judgment and Obtain Relief from Such Judgment, effectively affirming the court's granting of summary judgment in favor of DAL. On appeal, Ms. Daniels argues that the circuit court erred in rejecting her failure to accommodate claim and her retaliation claim under the West Virginia Human Rights Act ("WVHRA"). Further, Ms. Daniels contends the circuit court erred in rejecting her private cause of action under the West Virginia Medical Cannabis Act ("WVMCA") and her claim for violation of public policy. Lastly, Ms. Daniels asserts the circuit court erred in finding that DAL's return-to-work drug testing did not violate her right to privacy. As discussed below, we affirm the circuit court's May 1, 2023, order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Daniels began working for DAL in 2011 as a customer service agent at Yeager Airport. In her position, Ms. Daniels worked the front ticket counter and airport gates, supporting Delta and United Airlines. Her job duties included, but were not limited to, checking passengers' bags and identification, asking passengers safety screening questions, scanning boarding passes, rebooking passengers, interacting with the pilots in the cockpit, monitoring passengers for signs of intoxication or other safety concerns that would prohibit them from boarding the plane, and ensuring compliance with federal safety regulations. During her employment, Ms. Daniels resided in Proctorville, Ohio.

1

As part of her employment, Ms. Daniels was subject to a DAL policy which required all employees who were on leave from work for more than thirty days to submit to drug testing upon their return to work. This policy prohibits the use of all illegal drugs, both on and off duty, and states that a violation of this policy will result in termination. Ms. Daniels was aware of this policy.

In June of 2019, Ms. Daniels obtained a medical marijuana card to use medical marijuana in Ohio from her Ohio-based physician. She has never received certification to use marijuana in West Virginia. As of 2020, medical marijuana dispensaries did not exist in West Virginia. On August 6, 2020, Ms. Daniels began a medical leave of absence from her employment due to a nerve issue in her hand and arm. On October 2, 2020, Ms. Daniels informed her supervisor, Jennifer Kuhn, that her physician cleared her to return to work on October 19, 2020. Ms. Daniels was aware that she would be drug tested upon her return to work. Ms. Daniels admittedly used marijuana on October 2, 2020.

On October 17, 2020, Ms. Daniels reported to a MedExpress location in West Virginia for her drug screen. Upon reporting to MedExpress, Ms. Daniels contacted Ms. Kuhn, disclosed that she had used marijuana within the past two weeks and asked if the test could be delayed. Ms. Kuhn informed her that a refusal to test would be considered a failed screen. Ms. Daniels proceeded to give a urine sample that day. After testing, and while awaiting results, Ms. Daniels asked Ms. Kuhn if she could keep her employment if she went to rehab upon testing positive. Ms. Kuhn responded that she would have to confer

2

with human resources; however, Ms. Daniels never attempted to enter rehab. Following the drug screen, a medical review officer confirmed Ms. Daniels tested positive for Tetrahydrocannabinol ("THC").

By text message dated October 25, 2020, Ms. Kuhn informed Ms. Daniels that she had tested positive for marijuana. Ms. Daniels was permitted to provide a written statement to human resources before a decision was made regarding her employment. On October 27, 2020, Ms. Daniels provided her written statement in which she admitted to ingesting THC gummies about two weeks prior and provided a copy of her Ohio medical marijuana card.

Ms. Kuhn then consulted with Michael James, a member of human resources, whereupon it was determined that termination of Ms. Daniels' employment was appropriate based upon her positive drug screen and DAL's policy prohibiting illegal drug use. On October 27, 2020, Ms. Kuhn informed Ms. Daniels by phone that her employment had been terminated.

On August 4, 2021, Ms. Daniels filed her Complaint against DAL. The complaint alleged: (1) wrongful termination in violation of the WVHRA by failing to provide Ms. Daniels a reasonable accommodation given her disability status;[1] (2) wrongful

---

[1] According to Ms. Daniels, she suffers from cervical and lumbar radiculopathy, fibromyalgia and spinal stenosis.

3

termination in violation of the WVHRA by committing retaliation; (3) wrongful discrimination and termination in violation of the WVMCA, which bars adverse employment action based upon her status as an individual using medical marijuana; and (4) that DAL violated Ms. Daniels' right to privacy by requiring her to submit to a drug screen without legal justification.

The parties filed cross-motions for summary judgment and the circuit court set the matter for hearing on January 31, 2023. A few days prior to the hearing, the circuit court cancelled the hearing and directed the parties to each file proposed findings of fact and conclusions of law. On February 10, 2023, the circuit court entered its order granting DAL's motion for summary judgment and dismissing the case.

In addressing Count 1 of the Complaint, the circuit court found that Ms. Daniels had failed to establish a prima facie case of disability discrimination under the WVHRA as set forth by *Skaggs v. Elk Run Coal Co.*, 198 W. Va. 51, 479 S.E.2d 561 (1996). The circuit court found that the WVHRA explicitly excluded the use of drugs from the "disability" protections of the statute. *See* W. Va. Code § 16B-17-3(m) (2024).[2] It found similar prohibitions existed under the federal Americans with Disabilities Act, 42 U.S.C. § 12114(a), and that the legislative rules promulgated by the West Virginia Human Rights

---

[2] At the time of the litigation below, "disability" as defined by the WVHRA was found at West Virginia Code § 5-11-3 which is now recodified as West Virginia Code § 16B-17-3.

4

Commission ("WVHRC") clearly set forth that the WVHRA did not prohibit the testing of job applicants or employees for the use of illegal drugs. *See* W. Va. Code R. § 77-1-5.6.

The circuit court found that Ms. Daniels did not have authorization under West Virginia law to use marijuana and that her marijuana use was illegal in 2020. Further, when tested in West Virginia, any marijuana in her system would constitute the use of illegal substances in this State. Because marijuana was illegal in West Virginia, she was not protected by the WVHRA. Ms. Daniels did not have a recognized disability and, thus, DAL was not required to provide an accommodation. Further, even if marijuana use was a recognized "disability," DAL would not have had to accommodate Ms. Daniels because it would have imposed an undue hardship on DAL given its strict, no tolerance drug use policy.

Next, the circuit court rejected Ms. Daniels' WVHRA retaliatory discharge claims as alleged in Count 2. To establish a prima facie retaliatory discrimination case, Ms. Daniels was required to show:

> (1) that [she] engaged in protected activity, (2) that [her] employer was aware of the protected activities, (3) that [she] was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation) (4) that [her] discharge followed […] her protected activities within such period of time that the court can infer retaliatory motivation.

*Brammer v. W. Va. Hum. Rts. Comm'n*, 183 W. Va. 108, 110-111, 394 S.E.2d 340, 342 (1990) (per curiam) (citations omitted). The court determined that Ms. Daniels did not

5

engage in a protected activity by simply requesting to be exempt from DAL's policy requiring drug testing. The circuit court further reasoned that even if she engaged in a protected activity, Ms. Daniels had failed to prove her retaliation claim under the framework established in the Supreme Court of the United States ("SCOTUS") decision, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and relied upon in *Skaggs*. To prove a WVHRA violation, Ms. Daniels was required to show "but for" her request to avoid the test, she would not have been terminated. The circuit court found that Ms. Daniels was aware of DAL's long-standing policy, and that her termination was based upon her violation of that policy, rather than her request. The policy was applied to Ms. Daniels just as it would have been to any other DAL employee, and her request to delay or avoid the drug test played no role in her termination.

The circuit court then addressed Counts 3 and 4 of the Complaint, which alleged violations of the WVMCA. These Counts alleged discrimination and wrongful termination based upon the language of West Virginia Code § 16A-15-4(b)(1) (2017):

> No employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee regarding an employee's compensation, terms, conditions, location or privileges solely on the basis of such employee's status as an individual who is certified to use medical cannabis.

The circuit court rejected both claims, finding Ms. Daniels' marijuana use did not meet the WVMCA's definitions of "medical cannabis" (West Virginia Code § 16A-2-1(a)(20) (2019) (amended 2024)); and "certified medical use" (West Virginia Code § 16A-2-1(a)(5)). Also, Ms. Daniels was found to not meet the definition of "patient." West Virginia

6

Code § 16A-2-1(a)(22). The circuit court further concluded that no private cause of action existed under the WVMCA. Even if such a cause of action existed, the court found that Ms. Daniels would not qualify because she was not approved under the Act to use marijuana medicinally in West Virginia, which was a prerequisite to trigger the Act's employment protections. Additionally, addressing Ms. Daniels' Ohio medical marijuana certification, the circuit court concluded that her out of state certification was not recognized by West Virginia law, as the WVMCA only provides reciprocity for terminally ill patients. *See* W. Va. Code § 16A-3-5 (2017) (authorizing the Bureau of Public Health, Office of Medical Cannabis to enter into interstate reciprocity agreements to allow terminally ill cancer patients to purchase medical cannabis in another state).

The final issue addressed by the circuit court was Ms. Daniels' invasion of privacy claims. The circuit court concluded that Ms. Daniels had no reasonable expectation of privacy regarding the screening requirement under DAL's policy. While the circuit court recognized that in Syllabus Point 1 of *Twigg v. Hercules Corp.*, 185 W. Va. 155, 406 S.E.2d 52 (1990), our Supreme Court of Appeals held that it was contrary to public policy for an employer to require an employee to submit to a random drug test, *Twigg* also recognized two exceptions:

> Drug testing will not be found to be violative of public policy grounded in the potential intrusion of a person's right to privacy where it is conducted by an employer based upon reasonable good faith objective suspicion of an employee's drug usage or while an employee's job responsibility involves public safety or the safety of others.

7

*Id.* at 155, 406 S.E.2d at 52, syl. pt. 2.

The circuit court also noted that since *Twigg*, our Supreme Court of Appeals has found that the expectation of privacy does not extend to pre-employment drug screens. *See Baughman v. Wal-Mart Stores, Inc.*, 215 W. Va. 45, 592 S.E.2d 824 (2003). Based on this case, the circuit court ruled that Ms. Daniels had a lower expectation of privacy and found that the drug test was not an invasion of privacy. The circuit court further found that the drug test required by DAL would qualify for a *Twigg* exception because Ms. Daniels' "job responsibility involves public safety or the safety of others."

Thereafter, Ms. Daniels filed a motion to alter and amend that judgment pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. The motion sought to alter, amend, or set aside the summary judgment order based upon: (1) the legal conclusion that the marijuana in Ms. Daniels' system was illegal in West Virginia and the drug test in this State would be a test for illegal drugs; (2) the circuit court committed clear error by rejecting Ms. Daniels' disability and retaliatory discharge claims under the WVHRA; (3) the circuit court erred in rejecting the claims under the WVMCA; and (4) the circuit court committed clear error by rejecting the common law invasion of privacy claim.

On May 1, 2023, the circuit court entered its order denying the motion, mainly finding Ms. Daniels' arguments had all been made at the summary judgment stage

and that Ms. Daniels had failed to establish an intervening change in the existing law. The circuit court also found that Ms. Daniels was misstating the court's finding regarding the illegality of marijuana in West Virginia. Ms. Daniels argued that a West Virginia drug screen would be for illegal substances, thus meaning Ms. Daniels was guilty of the criminal offense of possession by having marijuana in her system. The circuit court found its ruling did not make such a finding or impose criminal responsibility. Ms. Daniels now appeals both orders.

## II. STANDARD OF REVIEW

There are two orders on appeal. With respect to the summary judgment order, our review is *de novo*. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 190, 451 S.E.2d 755, 756 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.") A motion to alter or amend is reviewed under the following standard:

> The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 431, 513 S.E.2d 657, 658 (1998). Because the motion sought to alter or amend an order granting summary judgment, we apply a *de novo* standard of review.

**III. DISCUSSION**

On appeal, Ms. Daniels argues four assignments of error as to the underlying final order granting summary judgment and three assignments of error as to the order denying Ms. Daniels' motion to alter and amend judgment. However, as some of Ms. Daniels' assignments of error overlap, we will address the overlapping assignments of error together.[3]

First, Ms. Daniels asserts that the circuit court erred in rejecting her failure to accommodate claim under the WVHRA by finding that her use of medically approved marijuana, which occurred in Ohio and in full accordance with Ohio law, constituted illegal drug use in West Virginia and prevented her from meeting the definition of "disabled." We disagree.

Under the WVHRA, the term "disability" means: (1) [a] mental or physical impairment which substantially limits one or more of such person's major life activities. The term "major life activities" includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working; (2) [a] record of such impairment; or (3) [b]eing regarded as having such an impairment. *See* W. Va. Code § 16B-17-3(m). Further,

---

[3] We have reordered Ms. Daniels' assignments of error to accord to our analysis. *See, e.g.*, *Harlow v. E. Elec., LLC*, 245 W. Va. 188, 195 n.25, 858 S.E.2d 445, 452 n.25 (2021).

10

> […] this term does not include persons whose current use of or addiction to alcohol or drugs prevents such persons from performing the duties of the job in question or whose employment, by reason of such current alcohol or drug abuse, would constitute a direct threat to property or the safety of others.

*Id.* As alleged in the Complaint, Ms. Daniels suffers from cervical and lumbar radiculopathy, fibromyalgia, and spinal stenosis. As part of her treatment, Ms. Daniels obtained an Ohio Medical Marijuana card and ingested THC. In requesting accommodations, Ms. Daniels requested her employer disregard her consumption of THC for the purposes of her drug screen upon her return to work following a medical leave of absence. DAL, as part of their policy, required Ms. Daniels to take the drug screen at the scheduled time, and, upon positive results for THC, terminated Ms. Daniels.[4]

The WVHRA does not shield Ms. Daniels from undergoing drug testing, as nothing in the Act prevents drug testing for illegal drugs. The Supreme Court of Appeals of West Virginia has previously held that "[t]he West Virginia Human Rights Act, […], requires that after commencement of an employee's employment duties, an employer shall not require an employee to submit to any medical examination, *excepting tests for illegal drugs* and voluntary examinations […]. Syl. Pt. 1, *Stone v. St. Joseph's Hosp. of Parkersburg*, 208 W. Va. 91, 538 S.E.2d 389 (2000) (emphasis added). Similarly, the

---

[4] DAL's employee policy explicitly states that employees who have not worked within 30 days must complete drug testing before returning to work.

11

federal Americans with Disabilities Act ("ADA") excludes an individual "who is currently engaging in the illegal use of drugs" from its protections. *See* 42 U.S.C. § 12114(a). "[T]he standards governing the ADA, […], and the WVHRA are coextensive." *Shafer v. Preston Mem. Hosp. Corp.*, 107 F.3d 274, 281 (4th Cir. 1997), *abrogated by Baird ex rel. Baird v. Rose*, 192 F.3d 462, 464 (4th Cir. 1999). Someone who is not disabled under the ADA would also not be disabled under the WVHRA. *See id.* at 281. In addition, the WVHRC Legislative Rules make it clear that nothing in the WVHRA is meant to "prohibit . . . the conducting of testing for the illegal use of drugs by job applicants or employees or making employment decisions based on such test results." W. Va. Code R. § 77-1-5.6. These legislative rules have the force of law. *See Wooton v. Walker*, 237 W. Va. 193, 197, 786 S.E.2d 212, 216 (2016) (citing W. Va. Code § 29A-1-2(d) [1982]).[5] Further, "[t]erminating an employee for 'current illegal drug use' does not constitute discrimination based on disability under anti-discrimination laws." *Foster v. Nash*, No. 2:19-cv-00818, 2020 WL 3318268, at *3 (S.D.W. Va. June 18, 2020) (citing *Shafer*, 107 F.3d at 281).

While Ms. Daniels has conditions that would ostensibly qualify as disabilities, entitling her to request reasonable accommodations, we conclude permitting the use of marijuana is not a reasonable accommodation. The WVHRA requires employers to make reasonable accommodations for known impairments to permit an employee to perform essential functions of the job. *See Skaggs*, 198 W. Va. at 65, 479 S.E.2d at 575.

---

[5] West Virginia Code § 29A-1-2(d) (1982) was recodified in 2015 and is now West Virginia Code § 29A-1-2(e) (2015).

However, as the circuit court correctly stated, the accommodation Ms. Daniels sought was to excuse use of marijuana. This is an accommodation that the WVHRA does not require under the rules promulgated pursuant to that statute. At present, marijuana is a schedule I narcotic under federal law. *See* 21 U.S.C. § 812(c)(c)(10), (17). Under West Virginia law, the use of marijuana is only afforded legal protection if used in accordance with the provisions of the WVMCA, which Ms. Daniels did not avail herself of. *See* W. Va. Code § 16A-3-2 (2017); *see also* W. Va. Code § 60A-2-204(d) (2023). Thus, under both West Virginia and federal law, marijuana was an illegal drug at the time of the drug testing. Accordingly, its use by Ms. Daniels was not protected by the WVHRA.

Ms. Daniels spends the majority of her first assignment of error arguing the circuit court made legal conclusions regarding her conduct as engaging in illegal criminal activity by violating West Virginia Code § 60A-4-401(c), possession of marijuana. However, whether Ms. Daniels committed criminal conduct is not the issue in this matter. Under the ADA and the WVHRA illegal drug use is not protected. Thus, the discussion of illegal drug use does not go to Ms. Daniels' conduct, but rather goes to the status of marijuana under West Virginia and federal law. Marijuana itself was, and is, a schedule I illegal drug under state and federal law.

Other portions of the WVMCA undercut Ms. Daniels' position. Under the WVMCA, "[n]othing in this Act shall require an employer to make any accommodation of the use of medical cannabis on the property or premises of any place of employment." W.

13

Va. Code § 16A-15-4(b)(2). Further, "[n]othing in this Act shall require an employer to commit any act that would put the employer or any person acting on its behalf in violation of federal law." W. Va. Code § 16A-15-4(b)(3). Thus, as shown above, Ms. Daniels' use of marijuana is not a reasonable accommodation invoking protection under the ADA, the WVHRA, or the WVMCA. Therefore, the circuit court was correct in finding that DAL's termination of Ms. Daniels was not a violation of the WVHRA.

As to her second assignment of error, Ms. Daniels contends the circuit court erred in rejecting her retaliation claim by finding that she did not engage in any "protected activity" by requesting to be exempt from a drug test. Ms. Daniels argues that terminating an employee for requesting a reasonable accommodation is a violation under the WVHRA. Further, Ms. Daniels argues that the issue of causation, i.e. the "but for" standard is a question of fact to be determined solely by the jury. We disagree.

To establish the prima facie case for a retaliation claim, Ms. Daniels must show:

> (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation) (4) that complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation.

Syl. Pt. 1, *Brammer v. W. Va. Hum. Rts. Comm'n*, 183 W.Va. 108, 394 S.E.2d 340 (1990).

The WVHRA "prohibits an employer or other person from retaliating against any

14

individual for expressing opposition to a practice that he or she reasonably and in good faith believes violates the provisions of the West Virginia Human Rights Act." Syl. Pt. 11, *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995). As discussed fully above, the use of marijuana is not a reasonable request for accommodation as stated in West Virginia Code § 16A-15-4(b)(2) and therefore does not qualify as a protected activity.

Even assuming that her request was a protected activity, the record is devoid of any evidence that Ms. Daniels was terminated for requesting the drug test be delayed as an accommodation. To prove a WVHRA violation, Ms. Daniels must show that "but for" the protected activity, the employment action would not have taken place. *See Waddell v. John Q. Hammons Hotel, Inc.*, 212 W. Va. 402, 404, 572 S.E.2d 925, 927 (2002). As shown by the record, DAL terminated Ms. Daniels for violation of their policy on drug use when she tested positive for THC. At oral argument, Ms. Daniels cited an email sent from Michael James, HR Business Partner for DAL, where he stated Ms. Daniels was terminated on the basis that a medical marijuana card does not permit an employee to be under the influence at work. While Mr. James' statement may be incorrect regarding the facts of this case, Ms. Daniels points to no evidence which supports the idea that she was terminated for requesting to be excused from the drug test. Thus, the circuit court did not err in finding Ms. Daniels failed to put forth any evidence to satisfy the "but for" element of a WVHRA retaliation claim.

In Ms. Daniels' third assignment of error, she argues that the circuit court erred in dismissing her WVMCA claim. In addressing this assignment of error, Ms. Daniels argues that the circuit court erred in finding (1) the WVMCA does not give rise to a private cause of action, (2) that the WVMCA only applies to individuals certified to use medical marijuana under West Virginia law, and (3) that Ms. Daniels had no cause of action based upon a violation of public policy. Again, we disagree.

The West Virginia Supreme Court of Appeals established the following test for determining whether a private cause of action exists for violation of a statute:

> The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.

Syl. Pt. 1, *Hurley v. Allied Chemical Corp.*, 164 W. Va. 268, 262 S.E.2d 757 (1980).

Ms. Daniels' first hurdle in attempting to satisfy the elements to establish a private cause of action requires her to show she is a member of the class for whose benefit the statute was enacted. Under the WVMCA, the program for medical marijuana was established for patients suffering from serious medical conditions. *See* W. Va. Code § 16A-3-1(a). "Patient" means an individual who (1) has a serious medical condition, (2) has met

16

the requirements for certification under this act; and (3) is a resident of this state. W. Va. Code § 16A-2-1(a)(22). "Medical cannabis" means cannabis for certified medical use as set forth in this act. W. Va. Code § 16A-2-1(a)(20). "Certified medical use" means the acquisition, possession, use, or transportation of medical cannabis by a patient, or the acquisition, possession, delivery, transportation, or administration of medical cannabis by a caregiver, for use as part of the treatment of the patient's serious medical condition, as authorized in a certification under this Act. W. Va. Code § 16A-2-1(a)(5). Based on the language of the WVMCA, in order for Ms. Daniels to be afforded the protections under the Act, she must be a resident of this state. The record is clear that Ms. Daniels is not a resident of West Virginia; she is a resident of Ohio. Additionally, the definition of "medical cannabis" is limited to cannabis for certified medical use under the WVMCA. Finally, "certified medical use" is also limited to use "authorized in a certification under this Act." Thus, Ms. Daniels is not a patient under the Act, the marijuana she used was not "medical cannabis" under the Act, and her use of marijuana was not "certified medical use" under the Act. Therefore, she is not afforded the protections of the WVMCA, and cannot establish that she is a member of the class that the Act protects.

Ms. Daniels further contends that under *Harless v. First Nat. Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978), the public policy of the WVMCA prohibits employment-related discrimination of any individual who legally uses medical marijuana based on the language of West Virginia Code § 16A-15-4(1) and would thus

17

support a cause of action for violation of this public policy.[6] This view runs counter to the language of the WVMCA when reading the Act as a whole. In determining whether an employee has successfully presented a claim of relief from wrongful discharge in contravention of substantial public policy, Ms. Daniels must satisfy four factors. The test requires Ms. Daniels to prove (1) that a clear public policy existed and was manifested in a state or federal constitution, (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy, (3) the plaintiff's dismissal was motivated by conduct related to the public policy, and (4) the employer lacked overriding legitimate business justification for the dismissal. *See Burke v. Wetzel Cnty. Comm'n*, 240 W. Va. 709, 726, 815 S.E.2d 520, 537 (2018). The WVMCA protects individuals who are residents of West Virginia that hold a valid medical marijuana card as discussed above. The WVMCA's reciprocity section limits reciprocity with other states to terminally ill cancer patients. *See* W. Va. Code § 16A-3-5. West Virginia Code § 16A-3-3, titled *Unlawful use of medical cannabis*, states that even medical use of marijuana is unlawful and a violation of *West Virginia's Uniform Controlled Substances Act* unless an individual or organization holds a license or permit from the West Virginia Bureau for Public Health. Nothing contained within the WVMCA suggests that the West Virginia Legislature intended for the Act to protect anyone other than West Virginia license holders.

---

[6] The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge. Syl., *Harless*, 162 W. Va. at 116, 246 S.E.2d at 271.

Ms. Daniels fails to put forth any evidence that her dismissal would jeopardize the public policy of allowing lawful use of medical marijuana for West Virginia license holders.[7] Wherefore, the circuit court did not err in finding Ms. Daniels could not sustain a private cause of action for violation of public policy under *Harless*.[8]

Finally, in her last assignment of error, Ms. Daniels contends that DAL's drug testing of Ms. Daniels violated her right to privacy. Ms. Daniels argues that under *Twigg v. Hercules Corp.*, 185 W. Va. 155, 406 S.E.2d 52 (1990), employers may only drug test employees under two circumstances: "[W]here it is conducted by an employer based upon reasonable good faith objective suspicion of an employee's drug usage or while an employee's job responsibility involves public safety or the safety of others." Syl. Pt. 2, *Twigg*, 185 W. Va. at 155, 406 S.E.2d at 52. Here, Ms. Daniels contends that she was tested following a leave of medical absence from work and therefore does not fall into either exception to the drug testing ruling under *Twigg*. Further, Ms. Daniels argues that her job duties are not "safety sensitive" as published in a bulletin from the Federal Aviation

---

[7] Ms. Daniels briefly argues the ruling of the circuit court violates the Dormant Commerce Clause. However, Ms. Daniels fails to explain how the Dormant Commerce Clause impacts the WVMCA. The West Virginia Legislature, in exercising its state sovereignty, limited the provisions to individuals who were certified under the WVMCA and only allowed for reciprocity from other states under extremely narrow circumstances. As Ms. Daniels does not pursue this argument more fully, we decline to address it further.

[8] Even if Ms. Daniels correctly alleged some constitutional deficiency with the WVMCA based on its effect on out of state residents, such a deficiency would not result in the creation of a private cause of action for persons such as Ms. Daniels.

19

Administration ("FAA") and therefore would not fall under the *Twigg* public safety exception.[9] We disagree.[10]

Based on the evidence in the record, Ms. Daniels' job duties clearly involve public safety or the safety of others. In February 2019, Ms. Daniels signed a personal safety commitment letter which outlined her safety responsibilities. According to Ms. Daniels' deposition testimony, her job duties included positive passenger bag matches, communication with the Transportation Security Administration ("TSA") regarding escalating safety situations, ensuring baggage weight compliance, questioning individuals regarding prohibited items in their bags, working the boarding gates, stopping unauthorized passengers from entering a plane, and preventing violent and/or intoxicated individuals from entering the plane. All these duties confirmed by Ms. Daniels in her deposition are designed specifically to ensure the safety of airline passengers and other airport employees.

---

[9] Under the FAA bulletin cited by Ms. Daniels, neither "ticketing" nor "baggage handling" are considered "safety-sensitive" job functions.

[10] The entire issue of drug testing of airline employees is arguably preempted by federal law under both 14 C.F.R § 120.121 and 49 U.S.C.A. § 45102. However, neither party raised this issue on appeal. While matters of preemption involve subject matter jurisdiction and can be addressed at any time by this court, our outcome in this case is the same regardless of whether we decide the issue on the merits, or if the matter were preempted. *See State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W. Va. 338, 345, 801 S.E.2d 216, 223 (2017) ("It is well established that the issue of subject matter jurisdiction can be raised at any time, even *sua sponte* by this Court."). Accordingly, we will not further discuss the potential preemption issue.

Ms. Daniels argues that whether her job involves public safety should be a question of fact. However, Ms. Daniels presents no evidence that her job did not involve public safety. Instead, she argued that her job wasn't automatically qualified as "safety sensitive" by the FAA. However, the question of whether a job involves public safety or the safety of others under *Twigg*, is not determined by the FAA's independent classification of job titles. The record is absent any evidence which contradicts Ms. Daniels' own testimony concerning the safety duties inherent in her work. Further, under the evidentiary standards regarding summary judgment, "the party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence,' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Painter v. Peavy*, 192 W. Va. 189, 192-93, 451 S.E.2d 755, 758-59 (1994). A reasonable finder of fact would necessarily conclude that her job involved public safety and the safety of others. Accordingly, we affirm the ruling of the circuit court that the drug test required by DAL falls within the public safety exception of *Twigg*.[11]

---

[11] Ms. Daniels argues that the circuit court erroneously accepted DAL's interpretation of the holding in *Baughman v. Wal-Mart Stores, Inc.*, 215 W. Va. 45, 592 S.E.2d 824 (2003) by holding that *Baughman* excludes *Twigg's* protections from employees returning to work from a leave of absence. The Supreme Court of Appeals of West Virginia held in *Baughman* that a person has a lower expectation of privacy in the pre-employment context. However, since we find that her position involves public safety, an exception under *Twigg*, we do not need to find whether a return-to-work drug test following a leave of absence falls under the *Baughman* exception to *Twigg*.

## IV. CONCLUSION

For the foregoing reasons, this Court affirms the Circuit Court of Kanawha County's order dated May 1, 2023.

Affirmed.